[Civ. No. 5648. Fourth Dist. Mar. 5, 1958.]

L. M. SLADOVICH, Respondent, v. COUNTY OF FRESNO et al., Appellants.

Robert M. Wash, County Counsel, and Spencer Thomas, Jr., Assistant County Counsel, for Appellants.

Lawrence W. Young and Donald R. Franson for Respondent.

GRIFFIN, J.—Plaintiff and respondent L. M. Sladovich brought this action against the county of Fresno and its board of supervisors for declaratory relief, alleging that plaintiff owned property approximately 40 acres of land, in Fresno County immediately northwest of the city of Fresno, which was improved with a vineyard and a house located on the east side of Braley Avenue and about midway between Shaw Avenue on the north and Ashlan Avenue on the south; that the defendant board of supervisors, pursuant to its ordinance Number 322, and amendments thereto, zoned plaintiff's property as Zone R-A (Rural Residential and Agricultural). A zone map indicating 13 classes of zones is made a part of said ordinance and the property is so classified thereon. A copy of this map is used as an exhibit in this case. The Southern Pacific Railway tracks extend through the city of Fresno in a general northwest-southeast direction and immediately east of Highway 99. The bulk of the property to the east of the tracks and abutting on them in that neighborhood is classified as M-2 Zone (Heavy Industry). The general plan appears to be that to the immediate east of that zone, though irregular, Zone M-2 is joined by other land denominated M-1 (Light Industry). To the west of plaintiff's property are M-2 and M-1 zones. On the M-2 property, consisting of about 52 acres, is a cotton press located about 630 feet west of plaintiff's property, with extensive operations during the cotton season. The railway tracks are about one-fourth mile west of plaintiff's acreage. The general area to the north and east of plaintiff's property (80 acres), classified as R-A, is used partially by a warehouse company for the seasonal storage in the open of cotton bales which are often moved by large trucks. This use was considered by the Zoning Commission to be an "M-2" use but was permitted upon this R-A zoned property as a

nonconforming use by reason of its existence there prior to the R-A zoning. Forty acres to the south and east of plaintiff's property is zoned M-2, and on it is located a conduit company for the manufacture of concrete pipe, which has extensive operations. South and east of it, near Ashlan Avenue, is located another concrete plant (M-2 Zone) with heavy operations. The cotton press and the concrete mixing plants are all served by spur tracks from the Southern Pacific Railway Company.

In July, 1956, plaintiff filed a petition with the Planning Commission to have his property reclassified from R-A to M-2 Zone. At the hearing before the commission each party produced evidence as to the conditions prevailing. It was argued by plaintiff that due to these conditions, as an R-A Zone, his property was worth about $21,500, and if classified as M-2 Zone, it would have a value of $93,000. After consideration of the evidence the petition was denied without prejudice. Plaintiff appealed to the county board of supervisors. A full hearing was had resulting in a denial of plaintiff's petition without prejudice.

In this action plaintiff prayed that the establishment of the existing R-A Zone, as to his property, be declared illegal and void, and that he be authorized to use his property for heavy industry or "M-2 purposes."

Members of the planning commission and its director testified at the trial, held in January, 1957, that evidence, both pro and con, in relation to the petition of plaintiff to rezone his property, was produced at the hearing before the commission on July 31, 1956. Zoning maps here in evidence were used and the particular uses to which the surrounding properties were put were fully described. It affirmatively appears from that testimony that the city of Fresno, the county of Fresno, and the city of Clovis had, in the month of March, 1956, due to certain existing conditions, entered into some form of agreement with an "Area Planning Commission" in consideration of many thousands of dollars, to study and analyze properties in these cities and portions of the county surrounding them in regard to a land use study pertaining to adjustment of classifications, zoning or rezoning of said properties to the best advantage of said property owners, the cities, the county, and the metropolitan area, all of which involved approximately 80,000 parcels of property including the property in the area here in question. In July, 1956, the "Area Planning Commission" and staff began more in-

tensive work on the subject in conjunction with the officers and staff of the several planning commissions, and certain information was made available to the county planning commission as the work progressed pertaining to the area here involved. It appears that several of these property owners near plaintiff's property were desirous of having the classification of their property changed, and these changes were in the process of study when plaintiff filed his petition to change his property zone class from R-A to M-2 Zone.

Apparently the evidence thus produced before the county planning commission was considered by it. It appears that at least one of the motivating factors leading to the denial of the petition was the fact that an intense study was being made, as indicated, and that any present change in the classification of plaintiff's property might reasonably affect other surrounding property and that similar applications would be made by such owners, thus greatly enlarging the M-2 Zone, if granted, which might well interfere with and change the findings and report of the area planning commission in respect to the entire district. Accordingly, the petition was denied, without prejudice. The general report was to be completed by June 30, 1957.

After due notice under said ordinance a hearing was had before the defendant board of supervisors. The evidence taken before the commission as well as considerable additional evidence was received. The principal planner for the area planning commission there testified as to the progress made in its general study under the contract, in much more detail in reference to the area here involved, although his full report had not yet been completed. Several members of the board of supervisors testified and gave various reasons for upholding the planning commission in denying the petition. Some made personal observations of the surrounding territory and considered the fact that the prevailing wind was from the northwest across this M-2 industrial property, and in general blew over and across residential and possible residential districts of the city and county and that any increase in industrial use would be detrimental to such districts and their inhabitants, especially if used for hog-feeding purposes or similar unpleasant uses abusive to the senses and general health. Their testimony indicated that the board generally considered as a factor the fact that experts had been employed, at great expense, to study this, as well as the general problem

confronting them and that petitioners should await the results of that study before the board should grant petitioner's request to have his property rezoned to M-2. It denied the 'petition without prejudice.

Volumes of evidence were produced before the trial court, both pro and con, including additional testimony of the area planner, showing what progress had been made in their study. Maps were produced and picture slides exhibited showing in detail many of the results affecting plaintiff's property and the surrounding area. There was testimony that the area in the vicinity of the subject property zoned for industrial uses is now about 50 per cent developed to industrial uses; that due to proposed realignment of Highway 99 as a freeway near there, there will soon be an undetermined change in the industrial zoning and traffic pattern; that the area lying east of Valentine Avenue and east of plaintiff's property is potentially good residential property; that there should be a buffer between M-2 uses and residential uses; and that this property should be classified as to constitute a buffer zone to it; that the open storage of cotton bales to the north and east of the subject property is a nonconforming use involving minimum improvements, does not prove harmful to surrounding properties, and may possibly be terminated in time; that due to wind conditions this area would be just about the last place to expand or locate a new industrial development; that if not used for R-A Zone purposes there are many other purposes than M-2 which are "transitional" uses to which the property could be put and which would not aggravate the existing conditions.

Plaintiff produced evidence as to the dilapidated condition of his house, fig trees and grape vines on this acreage. He claimed it could not be economically maintained as such; that the noises and stenches were unbearable for living purposes; that since the surrounding territory was classified and used for heavy industrial purposes the ordinance classifying his property as R-A was unconstitutional and void.

The court heard the evidence produced, viewed the surrounding territory and conditions and found that the planning commission and the board of supervisors acted arbitrarily, oppressively and unreasonably in denying plaintiff's petition, and found that the existing ordinance, as applied to plaintiff's property, was null and void. It entered an interlocutory decree to the effect that the board of supervisors reconsider plaintiff's application with a view to granting him

"M-2 zoning within 30 days." After reconsideration the board refused to rezone it. The court then made its findings and entered a final judgment ordering the board of supervisors to grant plaintiff's application for an M-2 Zone and directed a writ to it commanding it to rezone the property to "M-2." Defendants appealed from the judgment and certain provisions of the interlocutory judgment.

The findings, in general, described the general nature of the surrounding properties, as indicated, and found that plaintiff's fig trees surrounding his vineyards were old and not economically productive; that extensive noises emanated from the area to the northeast; that clouds of dust settled on plaintiff's property; that the cotton compress seasonal operations can be heard for a distance of four miles, sometimes for 16 hours a day; that these conditions and operations, together with the other operations mentioned, disturb plaintiff in his ability to live on said property and to farm it; that the owner of the 20 acres adjoining plaintiff's property to the north did not now farm it and does not object to an M-2 Zone for plaintiff's acreage. The court then found that one of the seven members of the planning commission actively participated in said hearing before the commission, and that he owned property about one mile east of plaintiff's property and had an interest in seeing that his property would not be affected by granting such petition. It then found that due notice was given and another hearing was had before the board of supervisors. It also found in respect to the evidence produced by the county of Fresno that it was engaged, through the Fresno-Clovis Planning Commission, in a comprehensive study of general land uses in said county to determine the proper usages to which the land in said county should be zoned; that the reason for the denial of plaintiff's application by the planning commission and the defendants was to await the outcome of said study; and found as untrue the zoning of plaintiff's property to M-2 usages would adversely affect the comprehensive general zoning plan in progress, since all of the adjoining acreage around plaintiff's property is developed or committed to industrial development as indicated; that said defendants, in refusing to grant plaintiff's application acted arbitrarily and unreasonably; and that plaintiff's property is unsuitable for any uses other than M-2 Zone uses.

The main question here to be determined, as indicated by

appellants, is whether or not the trial court was justified in finding that the planning commission and the board of supervisors acted arbitrarily, oppressively and unreasonably in not finding that the ordinance specifying the present "R-A" Zone, as applied to plaintiff's property, is null and void; and whether the trial court exceeded its power in ordering a writ to be issued directed to the board of supervisors commanding it to rezone the property to an "M-2" Zone.

Plaintiff did not bring this action under section 1094.5 of the Code of Civil Procedure in reference to the review of administrative orders or decisions by writ of mandate. He resorts to an action for declaratory relief in which the trial court declared the ordinance to be unconstitutional insofar as it affected plaintiff's property and, in effect, directs, by writ of mandate, that the board of supervisors amend its ordinance by legislation to classify plaintiff's property as M-2 Zone.

It has been recognized that in an action for declaratory relief a county zoning ordinance may be tested as to its constitutionality where the board of supervisors acted arbitrarily or abused its power and discretion and where the restrictions imposed have no substantial relation to health, safety, morals or the general welfare. (*Clemons* v. *City of Los Angeles*, 36 Cal.2d 95 [222 P.2d 439]; *Carrier* v. *Robbins*, 112 Cal.App.2d 32 [245 P.2d 276]; *Skalko* v. *City of Sunnyvale*, 14 Cal.2d 213 [93 P.2d 93].) In *City and County of San Francisco* v. *Boyd*, 22 Cal.2d 685 [140 P.2d 666], in a mandamus proceeding, it was held that courts will not interfere with the discretion and deliberation of a rate-making authority unless its action is fraudulent or so palpably unreasonable and arbitrary as to indicate an abuse of discretion, *as a matter of law.* See also *Carrier* v. *Robbins, supra,* page 35. In a proceeding under section 1094.5 of the Code of Civil Procedure (mandamus) the power of the trial court is especially limited. It provides in part:

"(e) The court shall enter judgment either commanding respondent to set aside the order or decision, or denying the writ. Where the judgment commands that the order or decision be set aside, it may order the reconsideration of the case in the light of the court's opinion and judgment and may order respondent to take such further action as is specially enjoined upon it by law but the judgment shall not limit or control in any way the discretion legally vested in the respondent."

■ In *Clemons* v. *City of Los Angeles, supra,* it was held that a zoning ordinance is considered with every intendment in favor of its validity, and a court will not, except in a clear case of oppressive and arbitrary legislation, interfere with the legislative discretion which has been exercised in the adoption of the regulation; and that it is presumed that a zoning ordinance as a whole is justified under the police power and adapted to promote the public health, morals and general welfare, and so long as the necessity or propriety of the enactment remains a question on which reasonable minds might differ, there will be no judicial interference with the municipality's determination of policy. ■ To the same effect is *McCarthy* v. *City of Manhattan Beach,* 41 Cal.2d 879 [264 P.2d 932], where it is held that where substantial reason exists to support the determination of the city council in matters of opinion or policy affecting zoning plans, and propriety of districting classification is fairly debatable in furtherance of community development, courts will not substitute their judgment for that of municipal authority; ■ and that the fact that plaintiffs may suffer some financial detriment by city ordinance permitting them to use their property only for limited facilities does not require invalidation of such zoning restriction, since every exercise of police power is apt to affect adversely the property interest of somebody. ■ See also *Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332 [175 P.2d 542], where it was held that where it is claimed that a city zoning ordinance is unreasonable as applied to plaintiff's property, or that a change in conditions has rendered application of the ordinance unreasonable, it is incumbent on plaintiff to produce sufficient evidence from which the court can make such findings as to the physical facts involved as will justify it in concluding, *as a matter of law,* that the ordinance is unreasonable and invalid. It is not sufficient for him to show that it will be more profitable to him to make other use of his property, or that such other use will not cause injury to the public. It quotes from *Zahn* v. *Board of Public Works,* 195 Cal. 497 [234 P. 388], and said that where the facts surrounding the board's determination are fairly debatable the settled rule is that the court will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question.

■ Notwithstanding the findings of the trial judge, based upon the evidence and his view of the premises, there is little,

if any, dispute that the subject property, when classified as R-A by the board of supervisors, was, in fact, being used for agricultural and residential property. It was bordered on the north by property of the same character (R-A). To the north of that property is additional acreage so classified, although it was then being partially used for storage of cotton. To the north of that and between Herndon Canal and Shaw Avenue is agricultural land zoned A-1. Generally, to the northwest and bordering on the north half of plaintiff's property is M-1 Zone property partially occupied by the airport indicated. The property to the west of plaintiff's property (M-2 Zone) does not border plaintiff's property except as to its south one-half. The property to the east of it, though denominated R-A Zone, is partially occupied for residential purposes. It is, however, to the north of that, and to a great extent, used, at least seasonally, for the storage of cotton. It cannot be fairly said, as a matter of law, from the facts presented and the undisputed evidence produced, that present conditions render the ordinance invalid and unconstitutional as it applies to plaintiff's property or that the board of supervisors acted arbitrarily, particularly where it was apparently endeavoring, in good faith, to hold the question of reclassification in abeyance pending the result of a complete study of this, as well as other districts involved, and where it afforded plaintiff an opportunity to again present a petition for reclassification. It appears to us that, in effect, the denial of plaintiff's petition under these circumstances was similar to the method provided for under section 65806 of the Government Code, where the county board of supervisors is authorized to pass a temporary ordinance under such conditions, holding the classification in abeyance until the results of studies in relation to the property could reasonably be determined. (*Lima* v. *Woodruff*, 107 Cal.App. 285 [290 P. 480]; *Price* v. *Schwafel*, 92 Cal.App.2d 77 [206 P.2d 683].)

It is plaintiff's claim, as we construe it, that his property, with the exception of the 20 acres to the north, is surrounded by heavy industrial uses and that the failure to place his property in such category (M-2) amounted to classifying his property as an island within such zoning so as to bring him within the rule applied in *Reynolds* v. *Barrett*, 12 Cal. 2d 244 [83 P.2d 29]. It appears to us that it is a reasonably debatable question whether the facts show, as a matter of law, that plaintiff's property was entirely surrounded by heavy industry (M-2) or its uses. Therefore, the rule set out in the Reynolds case is inapplicable.

The remaining claim is that the use of the adjacent property renders plaintiff's land entirely unsuited for the only purpose permitted by the ordinance. Here the property was planted to trees and grapes. It is true there was evidence of deterioration and lack of care, and it was economically inadvisable to replant or fertilize. At least it could be said that it was a reasonably debatable question as to whether it was suited only for M-2 uses. (*Wilkins* v. *City of San Bernardino, supra,* p. 340.) It was stated in *Reynolds* v. *Barrett, supra,* page 249:

"The line between business and residential property must be drawn somewhere. The mere fact that business property is located across the street or even adjoining the residential property involved does not determine that the ordinance is invalid or discriminatory. . . . The fact that nearby business property has the same characteristics as the parcel involved in the proceeding does not justify the court in substituting its judgment for the legislative judgment."

We therefore conclude that the court's holding that plaintiff's property could not be classified other than M-2 (Heavy Industrial Property) is not justified by the evidence, and it would be usurping the discretionary right of defendants to classify it in a less offensive category provided by said ordinance. The finding that the new area planning commission could not, by its study, classify the plaintiff's property other than M-2, when considered in connection with other possible changes made or recommended to defendant board, is but a conclusion and usurps the legitimate exercise of the board's power. (*Jones* v. *City of Los Angeles,* 211 Cal. 304 [295 P. 14] ; *Wilkins* v. *City of San Bernardino, supra,* p. 337.)

The trial court's finding that one of the seven planning commissioners who owned land, planted to figs, located about one mile east of plaintiff's property, was biased because he erroneously believed that M-2 classification of plaintiff's property would detrimentally affect his property and that he failed to disclose his interest to the other commissioners, would not necessarily void the actions of the remaining members in denying the permit and would not void the actions of the defendant board of supervisors before whom the entire evidence and the action of the planning commission was reconsidered. Since other members voted to deny the petition, the planning commission had jurisdiction to act. (*Nider* v. *Homan,* 32 Cal.App.2d 21 [89 P.2d 135].) Plaintiff

242

had a fair and impartial hearing before the board of supervisors, which was duly authorized by said ordinance to conduct said hearing. There was no sufficient showing that plaintiff's rights were jeopardized. (*Johnston* v. *Board of Supervisors*, 31 Cal.2d 66 [187 P.2d 686].)

 As to the portion of the judgment in the form of a writ of mandate which directed defendant board of supervisors to rezone said property to an M-2 Zone and its uses, it appears to be beyond the power of the court to so direct, whether such board be considered a judicial or legislative body in reference to its actions in these proceedings. (Code Civ. Proc., § 1094.5; *Johnston* v. *Board of Supervisors, supra*; Gov. Code § 65463; *Nider* v. *Homan*, 32 Cal.App.2d 21 [89 P.2d 135].)

It is a fundamental rule under our system of government that the doctrine of separation of powers precludes the courts from interfering with the legislative processes. (Cal. Const., art. III; Civil Code, § 3423, subd. *Seventh*; *French* v. *Senate*, 146 Cal. 604 [80 P. 1031, 2 Ann. Cas. 756, 69 L.R.A. 556].)

There are certain cases, as pointed out by plaintiff, which allow a writ to issue to a City Council to act in a particular manner when sitting as a quasi-judicial administrative body, and when there is no other legal manner in which it can act, such as *Kling* v. *City Council*, 155 Cal.App.2d 309 [317 P.2d 708]. The general rule, in this respect, as conceded in this case, is that mandamus will issue to compel a court or quasi-judicial body to act on a matter properly brought before it but will not lie to compel it to act in a particular manner unless the situation presented is one in which such court or body can exercise its discretion in but one way. (*Lissner* v. *Superior Court*, 23 Cal.2d 711 [146 P.2d 232]; *Cramer* v. *County of Los Angeles*, 96 Cal.App.2d 255 [215 P.2d 497]; *Johnston* v. *Board of Supervisors of Marin County*, 31 Cal.2d 66 [187 P.2d 686].) In *Andrews* v. *City of Piedmont*, 100 Cal.App. 700 [281 P. 78], the court held that in a declaratory relief action the court did not err in declaring a zoning ordinance invalid, but it was error to go further and hold in effect that the city could not adopt any zoning ordinance that would be valid.

 Here it appears from the evidence that there were several classifications between R-A and M-2 zoning in which plaintiff's property could reasonably fall, or at least the question was reasonably debatable. It therefore was a matter of discretion to be exercised by defendant board of supervisors.

Accordingly, the order of mandate directed to said board to adopt a new ordinance and reclassify said property as M-2 was unauthorized.

Judgment reversed.

Barnard, P. J., and Mussell, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 30, 1958. Shenk, J., Carter, J., and Schauer, J., were of the opinion that the petition should be granted.