[Civ. No. 33340. First Dist., Div. One. Jan. 17, 1974.]

THE PEOPLE ex rel. STATE LANDS COMMISSION, Petitioner, v. THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent; CITY OF ALBANY et al., Real Parties in Interest.

**COUNSEL**

Evelle J. Younger, Attorney General, Jay L. Shavelson, Assistant Attorney General, Jerold A. Krieger and John Briscoe, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Lawrence D. Saler, City Attorney, Goldfarb & Owens and Thomas R. Owens for Real Parties in Interest.

## OPINION

**SIMS, J.**—By petition for writ of certiorari or prohibition or mandate the People of the State of California, acting by and through the State Lands Commission, seek review of an order of the trial court which, in response to a motion for summary judgment interposed by real party in interest Albany Land Fill Corporation, as an intervening plaintiff in a action for declaratory relief filed by real party in interest City of Albany, denied the motion for summary judgment, found that the State Lands Commission was not composed as required by law when it made the finding that was the subject of the action filed in the court below, and ordered that the matter the subject of the commission's finding be remanded to the commission and that the commission proceed forthwith to a rehearing of its previous decision. On consideration of the petition[1] and the opposition thereto filed by real parties in interest, an alternative writ of mandate issued ordering the trial court to vacate the foregoing order, to deny intervener's motion for summary judgment and to proceed to hear the pending action on its merits, or to show cause why such action had not been taken. Returns having been filed by real parties in interest, the matter was argued and has been submitted.

It is concluded that petitioner is entitled to a peremptory writ because the order was improperly made without a factual basis to support the finding that the commission was improperly composed, and was beyond the scope of the prayer for summary judgment.

Historically the facts relevant to the controversy go back to 1919 when the Legislature granted to the city "all the right, title and interest of the State of California, held by said state by virtue of its sovereignty in and to

---

[1]Following the filing of the petition and pursuant to the prayer contained therein this court issued the following order, "Pending the further order of the court, the real party in interest and intervener in Alameda County Superior Court Action No. 428396, City of Albany v. People of the State of California, are ordered restrained from any fill activity relating to the certain tide and submerged lands within San Francisco Bay granted in trust to the City of Albany by the State of California by chapter 211, Statutes of 1919."

A dispute arose as to the meaning of "fill activity" and the matter was presented to the court at the time of the hearing on the merits of the petition through a motion made by petitioner and opposition filed by real parties in interest. The parties were directed to prepare an appropriate order which would permit some deposit of fill material on land already filled above high water mark insofar as the same could be accomplished without substantially changing the status quo.

all tidelands and submerged lands, whether filled or unfilled, which are included within the present boundaries of the city of Albany, to be forever held by said city and by its successors in trust for the use and purposes, and upon the express conditions following, to wit: [¶] That said lands shall be used by said city and its successors, only for the establishment, improvement and conduct of a harbor, and for the construction, maintenance and operation thereon of wharves, docks, piers, slips, quays, and other utilities, structures and appliances necessary or convenient for the promotion and accommodation of commerce and navigation, . . ." (Stats. 1919, ch. 211, § 1, p. 310.) The statute also includes restrictions on alienation, provisions for franchises and leases for periods not to exceed 50 years, and other conditions.

In 1961 the foregoing statute was amended to increase the purposes for which the lands could be used, to lengthen the period of permitted franchises or leases to 66 years, and by the addition of other provisions and conditions. (Stats. 1961, ch. 1763, § 1, p. 3767.) The last paragraph of this statute (erroneously designated as a second "(g)" although it follows paragraph "(i)") provides: "(g) That within 10 years from the effective date of the amendment of this section made at the 1961 Regular Session of the Legislature said lands shall be substantially improved by said city without expense to the State, and if the State Lands Commission determines that the city has failed to improve said lands as herein required, the authorization to use said lands for such additional purposes shall automatically terminate and lapse." (*Id.*, p. 3770.)

On March 23, 1972, the staff of the commission held a public hearing in the City of Albany. A report predicated on facts adduced at that hearing and from other investigations made by its staff was submitted to the commission at a meeting in Sacramento on May 24, 1972. The minutes of the meeting reflect that the following members of the commission[2] were pres-

---

[2]The State Lands Commission formerly in the Department of Finance and since 1969 (Stats. 1969, ch. 138, § 190, p. 339) in the Department of Conservation, consists of the State Controller, the Lieutenant Governor, and the Director of Finance. (Pub. Resources Code, § 6101.)

Since June 30, 1967 (Stats. 1967, ch. 450, §§ 1 and 2, p. 1661) section 7.6 of the Government Code has provided in pertinent part as follows: "The Lieutenant Governor may designate any person in his office holding a position specified in subsection (5) of subdivision (a) of Section 4 of Article XXIV of the Constitution to act as a deputy for the purposes of this section only, provided that *the Lieutenant Governor may not appoint a person to act as a deputy for him at meetings of* the Senate, or *the State Lands Commission* or of the Regents of the University of California, or of the Trustees of the California State Colleges." (Italics added.) (Cf. Op. No. 59-80, July 16, 1959; 34 Ops.Cal.Atty.Gen. 25. See also Op. No. CV 72-198, Sept. 26, 1973; 56 *id.* 399; and Op. No. 67-239, Nov. 28, 1967, 50 *id.* 120.)

ent: the State Controller, chairman, and the Director of Finance, member. Among those listed as "Also in Attendance" appears, *"Representing the Office of the Lieutenant Governor,* Peter L. Tweedt, Administrative Assistant to the Lieutenant Governor." At that meeting, which is the kernel of the controversy at issue in these proceedings, the commission adopted a resolution which found that the city had failed to substantially improve the granted land as required by the 1961 statute.[3]

On June 7, 1972, the city petitioned the commission for "a reconsideration of its decision by two of the members of the Commission on May 24, 1972 . . . ." No mention was made of any alleged illegal composition of the commission in that letter, or in a subsequent letter and enclosed affidavit of the president and sole shareholder of the intervening corporation. On August 31, 1972, the commission denied the request for reconsideration. According to the complaint and the complaint in intervention below, there were only two members of the commission present, of whom only one was present at the May 24, 1972, meeting. It would therefore, appear that the Lieutenant Governor voted against reconsideration.

On September 29, 1972, the city filed a complaint for declaratory relief in which it set forth generally the steps taken by the city to improve the lands the subject of the state grant, the action by the commission, and the existence of a dispute between the city and the commission as to what factors should be considered in determining whether the lands have been "substantially improved" as required by the statutory grant. The city further claimed that the statutory phrase was unconstitutionally vague, that it was

---

[3]The resolution reads: "THE COMMISSION [¶] 1. FINDS THAT THE CITY OF ALBANY HAS FAILED TO IMPROVE SUBSTANTIALLY THE LAND GRANTED TO IT AS REQUIRED BY SECTION 1(g) OF CHAPTER 1763, STATUTES OF 1961. SUCH FINDING UNDER THE TERMS OF SECTION 1(g) WOULD RESULT IN AN AUTOMATIC REVOCATION, BY OPERATION OF THE STATUTE, OF THE AUTHORIZATION TO USE SAID LANDS FOR THE ADDITIONAL PURPOSES STATED THEREIN. [¶] 2. AUTHORIZES THE EXECUTIVE OFFICER TO NOTIFY THE CHIEF CLERK OF THE ASSEMBLY, THE SECRETARY OF THE SENATE, AND THE CITY OF ALBANY, THAT THE COMMISSION HAS MADE AN INVESTIGATION OF SUBSTANTIAL IMPROVEMENT, AS REQUIRED BY THE GRANT STATUTE, AND FINDS THAT THE CITY OF ALBANY HAS FAILED TO IMPROVE SUBSTANTIALLY THE LAND WITHIN THE TERMS OF SECTION 1(g), CHAPTER 1763, STATUTES OF 1961. [¶] 3. AUTHORIZES THE STATE LANDS DIVISION TO AUDIT THE ACCOUNTS, REVENUES, AND EXPENDITURES RELATING TO THE TIDELAND TRUST OF THE CITY OF ALBANY TO DETERMINE WHAT RIGHTS AND/OR OBLIGATIONS MAY EXIST WITH REGARD TO THE GRANTEE AND THIRD PARTIES SO AS TO ENABLE THE STATE LANDS COMMISSION TO DETERMINE ANY FUTURE COURSE OF ACTION WITH RESPECT TO THE TIDELANDS."

denied equal protection of the law by the application of arbitrary standards and requirements different from those applied to others similarly situated, that the finding was the result of irrelevant inflammatory and prejudicial oral testimony, that the city was denied procedural safeguards prescribed by the Administrative Procedure Act, and that since only one member of the commission participated in both the original hearing and in the denial of reconsideration, the decision was not by a majority vote. The prayer for a declaration of the rights and duties of the city and the commission under the 1961 statutory grant also requested that the court declare that the commission unlawfully, invalidly and illegally revoked the uses of the land for the additional purposes set forth in the 1961 statute.

On December 13, 1972, the corporation filed its complaint in intervention, in which it set forth its interest under a 10-year contract with the city entered into January 1, 1964, which contained an option for renewal for another 10-year term. The complaint generally follows the allegations and prayer of the city's complaint.

The commission's motions to strike portions of each complaint were continued from time to time and ultimately ordered to be heard at the time of trial. On February 13, 1973, both the city and the corporation amended their complaints to allege the invalidity of the composition of the commission at its May 24, 1972, meeting.[4]

On April 13, 1973, the intervener filed a notice of motion "for an order declaring the decision of May 25, 1972 (*sic,* May 24, 1972) by the State Lands Commission null and void and entering judgment in favor of Intervenor." The motion was interposed on the ground that the commission was improperly constituted at its meeting in which the plaintiff's and intervener's rights were determined. In support of the motion the city attorney and the president and owner of the intervener corporation, each alleged: "3. The Commission on said date was comprised of three (3) persons, to

---

[4]Each amendment reads: "That the meeting of the State Lands Commission on May 25, 1972, wherein the said Commission allegedly determined that the plaintiff had not substantially improved said lands, and thus the additional land uses of the 1961 Grant were terminated, was illegally constituted and the decision therein void and of no force or effect by reason of the following: That at said meeting, the Lt. Governor was not present, and a Deputy had been appointed to act in his place and stead, and did, in fact, participate in the place of the Lt. Governor as a member of the three-man Commission, all of which is contrary to law, and particularly Section 7.6 of the Government Code of the State of California."

Each prays, "That the Court declare that the meeting of defendant on May 25, 1972, was illegally constituted, and the subject decision therein void."

wit: the Comptroller [*sic*] of the State of California, Houston Flournoy; the California Director of Finance, Vernon Orr; and a third person unknown to me but whom I knew not to be the Lieutenant Governor of California, Edward Reinecke. [¶] 4. The 'unknown' Commissioner sat behind the bench reserved for the Commission with the other two Commissioners, and as with the other two Commissioners that day, the 'unknown' member of the Commission asked questions of the people presenting evidence on the issue at hand, made comments concerning the evidence, and in all other ways fully participated in the conduct of the meeting. . . . [¶] 6. At the close of the public hearing aforesaid, Commissioners Flournoy and Orr expressed their conclusion that based on the evidence they heard at said hearing, the City of Albany had not substantially improved the tidal areas, and they voted to withdraw the aforesaid grant. To the best of my knowledge and belief, the 'unknown' Commissioner joined in that conclusion and vote."

In opposition the commission submitted the declaration of an administrative assistant to the Lieutenant Governor who stated, "On May 24, 1972, the Lieutenant Governor was unable to attend the meeting of the State Lands Commission and requested that I attend said meeting to represent him at the meeting. I have often represented the Lieutenant Governor at these meetings so that he can be kept informed of the transactions of the Commission when he is unable to attend. At the Commission meetings which I attend, I have often participated in the discussions concerning the matters before the Commission. However, both the Lieutenant Governor and myself are well aware that I cannot vote on Commission matters and I do not vote. [¶] At the meeting on May 24, 1972, I participated in the hearing concerning the Albany tidelands question, as any member of the public is allowed to do under Commission procedures. I did not vote on the question of whether the City of Albany had substantially improved the tidelands granted to them."

A further declaration by the acting executive officer of the commission reflects that he was present at the May 24, 1972, meeting. He stated: "In the absence of the Lieutenant Governor, Mr. Tweedt usually attends the meetings of the Commission. At the meeting of May 24, 1972, as well as all Commission meetings that Mr. Tweedt attends, he did not vote on any of the matters that came before the Commission. [¶] It has been the practice of the Commission to at times allow legislators to sit with them and participate in the discussion of matters before the Commission. However, the legislators, of course, are not allowed to vote. [¶] Mr. Tweedt did par-

ticipate at the meeting of May 24, 1972 in the discussions concerning 'substantial improvement' of the Albany tidelands. Mr. Tweedt did not vote on this matter. [¶] The meetings of the State Lands Commission are public and anyone can speak. During consideration of the Albany tidelands grant, besides the Commissioners, Mr. Tweedt, staff members, and members of the Attorney General's office, at least eight other persons participated."

The deputy attorney general representing the commission averred, "At said meeting, the Lieutenant Governor was not present, but Peter Tweedt sat with the Commission representing the Lieutenant Governor. Mr. Tweedt participated minimally in the presentation to the Commission. Mr. Tweedt did not vote on any matter before the Commission."

A certified copy of the minutes of the meeting lists the two members present, five staff members in attendance, and, as also in attendance, a state senator, an administrative assistant to the Lieutenant Governor, and three deputy attorneys general. Eight persons, including the aforementioned senator and the city attorney, were heard with respect to the City of Albany grant.

Following a hearing on April 25, 1973, the court expressed its ruling from the bench and the Attorney General sought to provide an order embodying the views of the court.[5] This order was not signed and the court on May 9, 1973, signed and filed the order bearing the card of the attorneys for the intervener which is the subject of this proceeding.[6]

---

[5]The proposed order read in pertinent part, "IT IS ORDERED that the motion for summary judgment shall be treated as a demurrer to the answer. The demurrer is sustained on the grounds set forth in said motion for summary judgment and defendant is hereby granted 30 days in which to amend its answer so as to allege that the State Lands Commission has reconsidered Item No. 7 on its calendar of May 24, 1972 (Minute Item No. 24), at a proceeding at which the Lieutenant Governor sits as a member of said Commission or at which the decision is reached without consultation with any representative of the Lieutenant Governor or any such representative sitting with the Commission. [¶] If defendant fails to amend its answer herein within the time specified or elects to stand on its answer without amending, a judgment will be entered forthwith."

[6]The order signed and filed reads in part: "The Court finds that the State Lands Commission which purportedly made a finding on the 24th of May, 1972, that the tidelands described in Chapter 1763 Statutes of 1961 had not been substantially improved as required by said Grant and therefore the additional uses granted to the City by the 1961 Statute had lapsed, was not composed as required by law and that therefore the action of said Lands Commission should be referred back by this Court to the Commission for further proceedings. [¶] IT IS THEREFORE ORDERED that said matter be remanded to the State Lands Commission and said Lands Commission is ordered to proceed forthwith to a rehearing of its previous decision and in accordance

I

■ In its motion for summary judgment the intervener prayed for an order declaring the decision by the commission null and void and for a judgment in its favor. Reading between the lines it appears that the trial court, in a well intentioned but misguided effort to avoid the delays attendant to an appeal, made a finding as requested but denied the prayer for judgment, and ordered the commission to hold a rehearing. This left the pending action in limbo. The commission could not secure review of the court's finding by appeal as would have been the case had the court entered a judgment. If it acquiesced in the court's decision it was admitting a finding which would throw a cloud on all proceedings taken on May 24, 1972, and perhaps those taken on other occasions when similar courtesies were extended to a representative of an absent member. Moreover, any attack on a decision made after such a rehearing would involve a review of the matters presented to the commission at that time, and render the present action moot. In substance the court has rendered a judgment in favor of the city and the intervener on the ground that the action of the commission was void, and yet at the same time denied the commission a right to secure a review of that order by denying the intervener's prayer for summary judgment.

It appears that in this case the court properly denied the motion for summary judgment. Under any construction of the declarations before the court there was at least a question of fact as to whether the acknowledged representative of the Lieutenant Governor had been appointed "to act as a deputy for him [or had acted as a deputy for him] at meetings of . . . the State Lands Commission." (Gov. Code, § 7.6, see fn. 2 above; and cf. part II below.) Under the provisions of section 437c of the Code of Civil Procedure a summary judgment cannot be granted a party who "by . . . affidavits shall show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact." If the affidavits or declarations show such an issue it is an abuse of discretion to grant the motion and to order judgment. (See *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Koret of Cal., Inc.* v. *City etc. of San Francisco* (1969) 2 Cal.App.3d 87, 91 [81 Cal.Rptr. 698]; *Bewley* v. *Riggs* (1968) 262 Cal.App.2d 188, 193 [68 Cal.Rptr. 520]; and *Saporta* v. *Barbagelata* (1963) 220 Cal.App.2d 463, 468-469 [33 Cal.Rptr. 661].)

---

with the provisions of the State Constitution and Section 7.6 of the Government Code. [¶] IT IS FURTHER ORDERED that the motion for summary judgment on behalf of plaintiff in intervention is hereby denied without prejudice."

Since the motion for summary judgment was properly denied the next step was to hear the commission's pending motions and to have a trial on the merits. On that posture of the case the commission is entitled to an order vacating the order requiring the commission to rehear the merits of the order, and ordering the trial court to hear the action on its merits. (See *Field Research Corp.* v. *Superior Court* (1969) 71 Cal.2d 110, 111 [77 Cal.Rptr. 243, 453 P.2d 747]; *Morrison Drilling Co., Inc.* v. *Superior Court* (1962) 208 Cal.App.2d 740, 744 [25 Cal.Rptr. 682]; and 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 88, p. 3862.) In *Field Research Corp.* v. *Superior Court, supra,* the trial court had purported to grant a partial summary judgment, which was perhaps the intent of the trial court in this case. The court pointed out, "The court's order is not appealable. Since petitioners have no 'plain, speedy, and adequate remedy, in the ordinary course of law,' and since the court erred in refusing to permit petitioners to proceed to trial on the issue of general and exemplary damages, the writ will issue. [Citations.]" (71 Cal.2d at p. 111.) So here the trial court by its order, which in effect abated the action, has denied the commission a hearing on the merits.

The city and the intervener contend that the commission has waived any objections to the order of the trial court because it did not attack the order in that forum, and in fact offered to prepare an order of similar tenor. The latter contention cannot be sustained. (Cf. fn. 5 with fn. 6.) The commission could have refused to amend and suffered judgment under its order and then appealed. The court's order contains no such alternative.

In *Schaeffer* v. *Municipal Court* (1968) 260 Cal.App.2d 819 [67 Cal. Rptr. 479], the court supported appellant's contention "that the superior court exceeded its jurisdiction in issuing the writ [of prohibition] without inquiry or showing that the jurisdictional question was first raised by plea, demurrer or other objection before the municipal court and there determined adversely to respondent." (260 Cal.App.2d at p. 821.) In this case, however, the issue raised by interveners' motion was heard and argued before the lower court, and there is no requirement that the aggrieved party seek a rehearing under such circumstances.

In *Neal* v. *State of California* (1960) 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], the court stated, "Although a writ of mandamus may issue to vacate a judgment entered by a court that lacked jurisdiction, a motion to vacate such judgment must first be made in the court that entered the judgment, and a denial of such motion must be appealed in the regular manner. [Citations.]" (55 Cal.2d at p. 16.) Here, as has been pointed out

above, there was no judgment. The commission is seeking an order for the court to exercise jurisdiction. It is not attacking the jurisdiction of the trial court, only the erroneous interlocutory order of that court from which there is no right of appeal. For that reason statements in *Neal* v. *State of California, supra* (55 Cal.2d at pp. 15 and 16) and *Phelan* v. *Superior Court* (1950) 35 Cal.2d 363 at p. 370 [217 P.2d 951]), which indicate that extraordinary relief will not be granted when the petitioner has a right of appeal, are not controlling in this case. Nor is the remedy by appeal adequate on the theory, suggested by real parties in interest, that the commission could hold a rehearing and subsequently appeal if the finding at the rehearing were held to be invalid in subsequent litigation. Such a hypothesis disregards the commission's right to secure a review and a final adjudication on the issue of the legality of the composition of the commission as it acted on May 24, 1972.

Intervener also suggests that the commission is not entitled to any relief because it has not been prejudiced by the court's order. On the merits of the issue raised by the order it is clear that the commission has been prejudiced by the denial of a trial on the merits of that issue, and by a possible erroneous conclusion of law with respect to that issue. (See part III *infra*.) Moreover, if the commission is denied relief in these proceedings and it seeks to carry out the mission assigned it by the 1961 legislation, it cannot stand on the proceedings already taken but will have to conduct a rehearing. It is entitled to a determination as to whether it has properly been ordered to forego any or all of the foregoing rights.

## II

Real parties in interest contend that the alternative writ should be denied because the order was proper in any event. In *Fascination, Inc.* v. *Hoover* (1952) 39 Cal.2d 260 [246 P.2d 656], the court stated: ". . . it is settled that where determinative powers are vested in a local administrative agency and the court finds its decision lacks evidentiary basis, a hearing was denied or it was otherwise erroneous, it is proper procedure to remand the matter to the agency for further and proper proceedings rather than for the court to decide the matter on the merits." (39 Cal.2d at p. 268. See also *National Auto. & Cas. Ins. Co.* v. *Downey* (1950) 98 Cal.App.2d 586, 594 [220 P.2d 962].) It undoubtedly would have been a proper judgment to remand the matter to the commission, if the court's finding could be sustained on the facts in the declarations before it on the motion for summary judgment. Such a judgment was not granted, and therefore the argument that "The

greater contains the less" (Civ. Code, § 3536; and see *Bar Assn. of S. F. v. Cantrell* (1921) 53 Cal.App. 758, 760 [200 P. 968]) does not apply. The power to give a judgment, which may be correct or erroneous, but, which, in any event, is subject to review, does not necessarily embrace the power to suspend proceedings and order a remand by a nonappealable order.

Similar considerations apply to the contention that section 475 of the Code of Civil Procedure[7] furnishes authority for the order made in this case. It is apparently contended that the court could order such a hearing because the rehearing would remove from the controversy the issue of whether the commission, which passed on the principal question of the sufficiency of the improvements, was properly constituted. It is pointed out that such a hearing could be held in approximately 30 days, whereas an appeal from a summary judgment would, and these proceedings will, consume a more appreciable period of time. The mere existence of a controversy cannot, however, give rise to power to require one party to surrender his views concerning that controversy without final adjudication that such views are erroneous. The court here purported to make such an adjudication. The commission could either accept it, or seek review in the manner which it has.

### III

■ In this case it would suffice to vacate so much of the order as purports to order the commission to hold a rehearing, and to direct the trial court to hold a hearing on the merits of the issues raised by the complaints and the answers, and by the commission's undisposed of motion to strike. The parties, however, have briefed and argued the merits of the question of the legality of the composition of the commission in the light of the provisions of section 7.6 of the Government Code (see fn. 2 above). It is conceded by the city and the intervener that there is no evidence that the Lieutenant Governor's representative voted on the resolution which resulted

---

[7]Code of Civil Procedure section 475 provides: "The court must, in every stage of an action, disregard any error, improper ruling, instruction, or defect, in the pleadings or proceedings which, in the opinion of said court, does not affect the substantial rights of the parties. No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed. There shall be no presumption that error is prejudicial, or that injury was done if error is shown."

in the forfeiture of the city's rights under the 1961 legislative grant. It is apparently assumed that the degree of his participation in the meeting of May 24, 1972, is fully set forth in the declarations on file. It is also apparent that there is a dispute as to the scope and meaning of the provisions of section 7.6. It is therefore appropriate to adjudicate the merits of the trial court's finding that the commission which acted on May 24, 1972, was illegally composed "since a refusal to do so would leave the parties and the trial court without guidance and would serve no purpose but delay." (*County of Santa Clara* v. *Superior Court* (1971) 4 Cal.3d 545, 552, fn. omitted [94 Cal.Rptr. 158, 483 P.2d 774].)

■ The issue, as framed most favorably for the city and intervener from the declarations submitted on their behalf, is whether the resolution adopted by the vote of two commissioners on May 24, 1972,[8] was adopted by an illegally comprised State Lands Commission because an administrative assistant to the Lieutenant Governor "sat behind the bench reserved for the commission" with the two commissioners who were duly designated by law, "asked questions of the people presenting evidence on the issue at hand, made comments concerning the evidence, and in all other ways fully participated in the conduct of the meeting."

Preliminarily real parties in interest are faced with the contention that by failure to interpose an objection to the conduct of the absent member's representative they are estopped to subsequently assert that his actions rendered him a member of the commission. Intervener claims it could not have waived the right to assert the illegal composition of the commission because it made no formal appearance at the hearing. Nevertheless, intervener's president and sole owner signed one of the declarations concerning the conduct of that meeting in which he alleged he attended and was present. He and the city attorney each did further allege, "At no time before or during the public meeting aforesaid was it announced or in any other way brought to the public's attention that this 'unknown' Commissioner had no status on the Commission and was not entitled to conduct the meeting and for all respects to be treated as a legitimate Commissioner. I did not know that said 'unknown' Commissioner was without status to sit as a Commissioner, nor did anyone else whom I spoke to concerning the meet-

---

[8]The allegations "To the best of my knowledge and belief, the 'unknown' Commissioner joined in that conclusion and vote" contained in the declaration of the city attorney and the declaration of the president and owner of intervener are disregarded because they are not within the personal knowledge of either declarant, because they are contradicted by the record, and because it has been conceded that there is no evidence to show that the representative of the Lieutenant Governor did vote.

ing so indicate any such knowledge. . . ." Each acknowledged that although the third person behind the bench was a person unknown to the declarant, he knew the person was not the Lieutenant Governor. It may also be pointed out that the request for rehearing in no way attacked the composition of the commission. It would appear that the only lack of knowledge was a lack of knowledge of the provisions of section 7.6 of the Government Code, which were discovered at about the time the amendments were made to the answers. It is true, however, that if the representative took formal action on the resolution, and his vote was necessary for its passage, the attack of plaintiff and intervener would be well founded regardless of their prior inaction. It is unnecessary to pursue the question of waiver for reasons set forth below which sustain the composition of the commission.

A more serious hurdle is posed by the fact that the Lieutenant Governor on August 31, 1972, apparently participated in denying reconsideration with one of the members of the commission who had voted for the resolution at the earlier hearing. This action would appear to be a ratification of the action taken on May 24, 1972, which would cure the alleged defect now asserted by real parties in interest, and in any event render inutile a further rehearing as ordered by the court. The contention that no identical two commissioners were present at each of the meetings is rendered meaningless by the provisions of section 6105 of the Public Resources Code which authorize any two members of the commission present at a meeting to take action by resolution.

In any event it is clear that the facts before the trial court did not sustain the finding that the commission was improperly composed on its meeting on May 24, 1972. The statute states, ". . . the Lieutenant Governor may not appoint a person to act as a deputy for him at meetings of . . . the State Lands Commission." It is generally understood that there is a distinction between an employee, agent or representative and a deputy. "A deputy, by the very act and authority which constitutes him such, has power to do any act which his principal may do, and to do the act in his principal's name." (*Foucht* v. *Hirni* (1922) 57 Cal.App. 685, 692 [208 P. 362]. See also *Sarter* v. *Siskiyou County* (1919) 42 Cal.App. 530, 536 [183 P. 852].) There is nothing in the record to show that the Lieutenant Governor, or the two members of the commission present, or anyone else authorized the representative to act as a deputy for the Lieutenant Governor in the official acts of the commission.

The fact that as a courtesy the representative was permitted to sit with

the commission is not of itself conclusive. In *Bracey v. Gray* (1945) 71 Cal.App.2d 206 [162 P.2d 314], the court observed with respect to a judge on a three-judge panel who sat with his colleagues during the hearing of a matter in which he was disqualified, "If he is entitled to remain in the courtroom it would seem to make little difference where he sat during that procedure." (71 Cal.App.2d at p. 209.) To the extent that he was permitted to ask questions of the people presenting evidence or make comments on the evidence, the representative was performing no more than the deputy attorneys general who were present, or as might have been allowed the state senator or any other person addressing the commission on request. If, as implied by the arguments of plaintiff and intervener, he participated in the deliberations of the board a more serious threat of acting as a deputy of the Lieutenant Governor is presented. That he did so is not directly alleged,[9] but, in any event, since the commission is a quasi-legislative board, and not a judicial tribunal, the representative's participation could not taint the two legitimate votes cast in favor of the resolution.

Plaintiff and intervener rely upon the general principle enunciated in *Wm. Cramp Sons v. Curtiss Turbine Co.* (1913) 228 U.S. 645 [57 L.Ed. 1003, 33 S.Ct. 722] where the court remanded the case to the then United States Circuit Court of Appeals because the presence of a district court judge, who had originally heard the case and entered the original decree, on the three judge panel rendered the Court of Appeals "a court organized not in conformity to law, but in violation of the express provisions of the statute." (228 U.S. at pp. 650-652 [57 L.Ed. at pp. 1009-1010]. See also *Nider v. Homan* (1939) 32 Cal.App.2d 11, 13-15

---

[9]It may be noted that section 6109 of the Public Resources Code formerly provided, "All meetings of the commission shall be open and public."

In 1967 this section was repealed and the meetings of the commission are controlled by the provisions of article 9 of chapter 1 of part 1 of division 3 of the Government Code sections 11120-11131. (Stats. 1967, ch. 1656, § 100, p. 4024 and § 122, p. 4026 et seq. and amendments thereto.) Pertinent provisions are as follows:

Section 11120: "It is the public policy of this state that public agencies exist to aid in the conduct of the people's business and the proceedings of public agencies be conducted openly so that the public may remain informed. [¶] In enacting this article the Legislature finds and declares that it is the intent of the law that actions of state agencies be taken openly and that their deliberation be conducted openly."

Section 11122: "As used in this article 'action taken' means a collective decision made by the members of a state agency, a collective commitment or promise by the members of the state agency to make a positive or negative decision or an actual vote by the members of a state agency when sitting as a body or entity upon a motion, proposal, resolution, order or similar action."

Section 11123: "All meetings of a state agency shall be open and public and all persons shall be permitted to attend any meeting of a state agency except as otherwise provided in this article."

and 20 [89 P.2d 136]; *Oakley* v. *Aspinwall* (1850) 3 N.Y. 547, 553-555; and *State* ex rel. *Getchel* v. *Bradish* (1897) 95 Wis. 205, 208-209 [70 N.W. 172, 173], but cf. *State* ex rel. *Cook* v. *Houser* (1904) 122 Wis. 534, 573-581 [100 N.W. 964, 976-979]; and *State* ex rel. *Starkweather* v. *Common Council of the City of Superior* (1895) 90 Wis. 612, 618-620 [64 N.W. 304, 305-306].) This principle was recognized and distinguished in *Bracey* v. *Gray, supra*. There the court noted, "The term 'sit and act' as it is used in section 170a [of the Code of Civil Procedure] . . . has been uniformly construed to mean that such disqualified justice shall not preside or participate in the hearing, trial or determination of the appeal, or exercise the duties of a member of the court in the particular case. [Citations.]" (71 Cal.App.2d at p. 209.) In this case the representative did not purport to exercise the Lieutenant Governor's duty of voting on the recommended resolution so it is questionable that he acted as a member of the commission.

Even if it be assumed that any participation would be deemed to taint a multiperson judicial body, it is clear that such participation does not taint the action of a legislative or quasi-legislative body which is supported by the requisite vote of duly qualified members of that body. In *County of Orange* v. *Heim* (1973) 30 Cal.App.3d 694 [106 Cal.Rptr. 825], as in this case, the state had made a limited grant of tidelands and submerged lands in 1919 (30 Cal.App.3d at pp. 700-701), and subsequently in 1957 passed further less restrictive legislation and delegated to the State Lands Commission the power to approve and concur in alienation of a certain portion of the lands upon making certain findings. (*Id.*, p. 702.) In construing the power and authority of the commission in that case the court observed, ". . . as respects the tidelands to be filled and reclaimed in the future, chapter 2044 constitutes simply a delegation of legislative authority to the SLC to make the necessary finding of 'uselessness' when the plan of harbor development and the land exchange agreement had been fully formulated by County, Harbor District and Irvine. . . . administration of the tidelands trust is a legislative function. We think it beyond question that the determinations of the SLC pertaining to administration of the trust pursuant to an express delegation of authority from the Legislature must be classified as quasi-legislative in character." (30 Cal.App.3d at pp. 717-719, passim. See also *Quinchard* v. *Board of Trustees* (1896) 113 Cal. 664, 669-671 [45 P. 856]; *People* v. *Oak. Board of Education* (1880) 54 Cal. 375, 376-377; *Wilson* v. *Hidden Valley Mun. Water Dist.* (1967) 256 Cal.App.2d 271, 278-281 [63 Cal.Rptr. 889]; *City Council* v. *Superior Court* (1960) 179 Cal.App.2d 389, 393-399 [3 Cal.Rptr. 796]; and

*Sladovich* v. *County of Fresno* (1958) 158 Cal.App.2d 230, 242 [322 P.2d 565]. Cf. *Nider* v. *Homan, supra,* 32 Cal.App.2d 11, 15-16.)

Since the proceedings are quasi-legislative in character, the fact the resolution was adopted by at least two members of the commission who were present at the meeting (Pub. Resources Code, § 6105) rendered it legal even if a disqualified person had not only participated but also had purported to vote in support of the resolution. (See *City Council* v. *Superior Court, supra,* 179 Cal.App.2d 389, 404-405; *Sladovich* v. *County of Fresno, supra,* 158 Cal.App.2d 230, 241; and *Nider* v. *Homan* (1939) 32 Cal.App.2d 21, 24 [89 P.2d 136]. Note also *Bracey* v. *Gray, supra,* 71 Cal.App.2d 206, 210.)

The trial court erred in finding, on the evidence before it, that the commission was illegally composed when it adopted its resolution on May 24, 1972.

Let a peremptory writ of mandate issue ordering respondent court to vacate so much of its order of May 9, 1973, as purports to order the petitioning commission to conduct a rehearing of the matter under review in the action pending in the trial court and to proceed with the trial of that action in accordance with the views expressed herein. The petition insofar as its seeks writs of prohibition and certiorari is dismissed as moot.

Molinari, P. J., and Elkington, J., concurred.

The petition of the real party in interest City of Albany for a hearing by the Supreme Court was denied March 27, 1974.