[Civ. Nos. 49261, 49990. Second Dist., Div. Four. Feb. 6, 1980.]

HAROLD A. TOSO et al., Plaintiffs and Appellants, v.
CITY OF SANTA BARBARA et al., Defendants and Appellants.

COUNSEL

Hatch & Parent, Thorpe, Sullivan, Workman, Thorpe & O'Sullivan and Henry K. Workman for Plaintiffs and Appellants.

Frederick W. Clough, City Attorney, for Defendants and Appellants.

George Deukmejian, Attorney General, E. Clement Shute, Jr., and Robert H. Connett, Assistant Attorneys General, Richard C. Jacobs and Marc B. Mihaly, Deputy Attorneys General, as Amici Curiae on behalf of Defendants and Appellants.

OPINION

KINGSLEY, Acting P. J.—This is an action filed by Toso individually and as agent of others against the City of Santa Barbara and all members of the city council who held office during the year 1974. The first cause of action seeks inverse condemnation damages under section 1246.3 of the Code of Civil Procedure (now § 1036); the second cause of action seeks damages for inverse condemnation; the third cause of action seeks a writ of mandate to compel the city to grant to Toso a rezoning of the property involved; the fourth claim is in mandamus (Code Civ. Proc., § 1085); and the fifth cause of action seeks declaratory relief. After a trial judgment was entered for the defendants on the first two causes of action and in favor of plaintiffs on the third, fourth, and fifth causes of action. The effect of the judgment in favor of plaintiffs was to vacate the proceedings hereinafter discussed that denied Toso a requested rezoning and to order the city to grant the rezoning requested.

The city has appealed from the judgment against it on the third, fourth, and fifth causes of action; Toso has appealed from the judgment against the plaintiffs and in favor of the city on the first and second causes of action.

While this appeal was pending, the plaintiffs other than Toso secured orders substituting themselves as parties appellant in place of Toso acting as their agent. The substituted parties then requested dismissal of the cross-appeal insofar as they were involved and we entered our order

of dismissal in accordance with that request. As a result of those proceedings, we now have before us the city's appeal and a cross-appeal by Toso as an individual. We reverse the judgment adverse to the city on the third, fourth and fifth causes of action; we affirm the judgment in favor of the city on the first cause of action. We affirm the judgment in favor of the city on the second cause of action.

At the time of the events herein involved, Toso had an option to buy from his coplaintiffs a tract of land in the City of Santa Barbara known as the Wilcox property. It was his desire and intent to develop that property as a resort hotel. The result of the events hereinafter described was that his request to rezone the property for that purpose was denied and in January of 1977, he allowed the option to expire unexercised.

In 1964, the City of Santa Barbara adopted a general plan showing the Wilcox property as a resort hotel with five dwelling units per acre. In 1965, the city zoning ordinance was amended to add a chapter providing for a resort hotel zone land zoned as RH also zoned as single and multiple family residential zone. The Santa Barbara zoning ordinance provides for zone changes by zoning amendments. The zoning ordinance provides for appeal to the city council and a public hearing following the denial of an application for a zone change.

Prior to Toso's application for rezoning, the city had permitted certain other property belonging to another person to be rezoned to RH zoning. This property which was granted rezoning already had a resort hotel on the premises. However, the city had also denied an RH rezoning application to W. Von Biskupsky, who wanted to build a resort hotel across the street from the Wilcox property. The city also denied the application to zone Loma Hacienda property for a resort hotel. The property surrounding the Wilcox property was zoned R-1 for single family residences at the time of plaintiff's rezoning application.

Toso knew that the city's general plan provided for a resort hotel on the Wilcox property when he secured the option to buy the property in 1973. In January of 1974, the city's environmental officer advised the city park director of an incipient movement to purchase the Wilcox property for a park. In February of 1974, Toso filed a rezoning application to change the zoning on the Wilcox property from E-1 and R-1 single family residences to RH resort hotel.

Citizens met with the park and recreation director to discuss the purchase of the Wilcox property as a park and, sometime after that, the city had the Wilcox property appraised for value. After the City of Santa Barbara received a sum of money for settlement of an oil spill, the city on July 23, 1974, placed the following proposition on the November 1974 ballot: "Shall the City of Santa Barbara purchase the Wilcox property for open space use?" The planning commission had several meetings on Toso's rezoning application. While they found the resort hotel plot plan aesthetically satisfactory, they denied Toso's application for resort hotel rezoning, finding that a commercial hotel in a single family area was an improper land use.

By a small majority, the voters in Santa Barbara approved the proposition favoring purchase of the Wilcox property, and the city attorney began negotiations with Toso's attorney for the purchase of the property.

Toso appealed the denial of the resort hotel rezoning application and, prior to the public hearing, the city council met in executive session with the city attorney to receive legal advice from him. A statement was prepared as a result of those sessions stating that the city council would divorce consideration of respondents' appeal on rezoning from the city's desire to purchase the Wilcox property. A public hearing was then held and respondents' rezoning application was once again denied.

The city attorney met with the city council and decided to inform Toso's attorney that the city was not interested in the property and that he was free to develop it as a residential subdivision. On February 3, 1975, the city attorney advised Toso's attorney that the city did not intend to condemn the property.

Toso then filed his complaint in inverse condemnation, damages and writ of mandate. The city attorney met with the city council to prepare a draft of a resolution. Afterwards, the city council adopted resolution No. 8111 stating nonintention to acquire the Wilcox property. The resolution also initiated proceedings to consider rezoning the property for a Planned Unit Development. (PUD).

Trial in the action began. The planning commission approved rezoning of the Wilcox property to E-3 PUD and E-1 PUD, which allowed either single subdivision or a planned unit development residential project.

## THE CITY'S APPEAL

The discussion below deals first with the city's appeal from that portion of the judgment that is not in its favor, including the order of the court to the city council to rezone the Wilcox property to permit a resort hotel.

### I

■ Appellant city's first argument is that the trial court erred in determining that the city council's denial of respondent's rezoning application was a quasi-judicial act reviewable under Code of Civil Procedure section 1094.5 rather than an act reviewable under Code of Civil Procedure section 1085. We agree. Toso, by his own language, sought to have the Wilcox property "rezoned" and he submitted a "rezoning" application for that purpose. Although, a decision granting a variance, a conditional use permit, or an exception to use is an administrative act, a decision on an application for rezoning is a legislative act. (*Tandy* v. *City of Oakland* (1962) 208 Cal.App.2d 609, 611 [25 Cal.Rptr. 429]; *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 413 [113 Cal.Rptr. 836, 522 P.2d 12]; *Banville* v. *County of Los Angeles* (1960) 180 Cal.App.2d 563, 570 [4 Cal.Rptr. 458].) Rezoning is accomplished by amendment of a zoning ordinance and by the same procedure as the original enactment, and a city council's act in amending a zoning ordinance to exclude previously included property is a legislative and not administrative act. (*Johnston* v. *City of Claremont* (1958) 49 Cal.2d 826, 834 [323 P.2d 71].) Therefore, the court below erred in its conclusion that the denial of Toso's rezoning application was a quasi-judicial act rather than a legislative act.

The trial court below then exacerbated this error by applying Code of Civil Procedure section 1094.5 rather than Code of Civil Procedure section 1085 as a method of review. Review under Code of Civil Procedure section 1094.5 is not available where an agency is acting in a legislative capacity. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35 [112 Cal.Rptr. 805, 520 P.2d 29].) Zoning is a legislative act reviewable under ordinary mandamus under Code of Civil Procedure section 1085.[1] (*Ensign Bickford Realty Corp.* v. *City Council* (1977) 68 Cal.App.3d 467 [137 Cal.Rptr. 304].)

---

[1]*HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 513, footnote 5 [125 Cal.Rptr. 365, 542 P.2d 237] states that the remedy for discriminatory zoning is also under Code of Civil Procedure section 1085. But see *Sladovich* v. *County of Fresno* (1958) 158 Cal.App.2d 230 [322 P.2d 565].

## II

Appellant city's second contention is that the trial court erred when it substituted its judgment for that of the city council by ordering the city council to apply resort hotel zoning to the Wilcox property, and by finding that the Planned Unit Development zoning for the Wilcox property was null and void. Again, we agree with appellant city. In this state, courts generally refuse to overturn the legislative bodies' refusal to rezone. (*Tandy* v. *City of Oakland, supra,* 208 Cal.App.2d 609; *Lockard* v. *City of Los Angeles* (1949) 33 Cal.2d 453, 461 [202 P.2d 38, 7 A.L.R.2d 990]; *Sladovich* v. *County of Fresno* (1958) 158 Cal. App.2d 230 [322 P.2d 565].) Denial of rezoning will be held valid unless there is no reasonable relation to the public welfare; and, before the courts will interfere with a zoning ordinance, the plan must be arbitrary.[2] (*Lockard* v. *City of Los Angeles, supra,* 33 Cal.2d 453, 461.) The sole issue on review of a zoning ordinance is whether or not there is any reasonable basis to support the legislative determination of the governing body, and the appellate court is not bound by the findings of the trial court if the record shows the question is debatable. (*Ensign Bickford Realty Corp.* v. *City Council, supra,* 68 Cal.App.3d 467.) In zoning cases, findings of the trial court that property is suitable only for certain purposes is not controlling and the appellate court will reverse where the lower court substitutes its judgment for that of the local legislative body. (*Lockard* v. *City of Los Angeles, supra,* 33 Cal.2d 453, 462.)

In the case at bar, the lower court improperly substituted its judgment for that of the local legislative body on the issue of the propriety of resort hotel zoning for the Wilcox property. Since it appears that the reasonableness of the Santa Barbara City Council's zoning ordinance prohibiting a resort hotel was at the very least debatable and since a zoning ordinance is presumptively valid (see *Ensign Bickford Realty Corp.* v. *City Council, supra,* 68 Cal.App.3d 467), the trial court below erred in ordering the city council to rezone the Wilcox property to permit a resort hotel. Also, since the Wilcox property is surrounded by other property zoned for single family residences, and since another property owner who had property across the street from the Wilcox property also had his application to rezone for a resort hotel turned

---

[2]The suggestion that zoning decisions by local zoning bodies are presumptively valid under all circumstances has been criticized in *Fasano* v. *Board of County Com'rs. of Washington Cty.* (1973) 264 Ore. 574 [507 P.2d 23].

down, we can not say that the zoning bodies' conduct herein was unreasonable.

## III

Appellant argues that, even if administrative mandamus under Code of Civil Procedure section 1094.5 was the proper remedy, the court improperly applied its independent judgment in reviewing the matter before it. As we have said before, it is our opinion that Code of Civil Procedure section 1085 was the proper remedy and not Code of Civil Procedure section 1094.5. Nevertheless we have answered the city's contentions in this matter.

■ A property owner acquires no vested right as against future zoning merely by purchasing real property (*Anderson* v. *City Council* (1964) 229 Cal.App.2d 79 [40 Cal.Rptr. 41]), and by zoning the property the government makes no representation to the landowner that he will be exempt from the zoning laws in effect at the time he applies for his permit. (*Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546].) Since the landowner had no vested right in the continuance of the zoning ordinance, even in a review under Code of Civil Procedure section 1094.5, the trial court is confined to evidence received by the administrative body, and the court may not reweigh the evidence. The court may only consider whether there is substantial evidence to sustain the finding. (See *Rapp* v. *Napa County Planning Com.* (1962) 204 Cal.App.2d 695, 697 [22 Cal.Rptr. 643].) Therefore, even if Code of Civil Procedure section 1094.5 had been the proper remedy, the trial court would not have been free to substitute its judgment.

## IV

Appellant argues that, even assuming administrative mandamus was the proper remedy, the trial court erred in concluding that the city council abused its discretion. Appellant first asserts that the trial court erred in concluding that the city council did not proceed procedurally in the manner prescribed by law. The findings do not show procedural violations, and there is no showing of abuse of a discretion.

## V

■ Appellant argues that the court erred in concluding that the city council's decision is not supported by the findings of the planning com-

mission. The planning commission had several reasons to support its decision that the Wilcox property should not be rezoned to be a resort hotel. They believed a resort hotel would be an objectionable intrusion into a residential area and would cause an unwarranted decentralization of the motel-tourist industry. Thus, there is substantial evidence to support the decision of the city council to deny respondent's rezoning application and the court below erred in this finding.

## VI

Appellant argues that the court erred in concluding there was no substantial evidence to support the city council's decision to deny the rezoning application. There was testimony in the record that use as a resort hotel was inconsistent with family residential purposes and this was in itself substantial evidence to support the city council's decision to deny rezoning.

## VII

Appellant argues that, assuming that administrative mandamus was the proper remedy, the trial court erred in concluding that the city council did not grant respondent a fair trial. Respondent stipulated that there had been no procedural due process violations, and there is no showing that the procedure itself was improper or unfair.

## VIII

Appellant argues that the trial court erred in considering the motives or intentions of the city council in acting upon respondents' rezoning application.[3] We agree. The motives of city officials in passing on a zoning ordinance have long been held irrelevant to any inquiry concerning the reasonableness of that ordinance (*McCarthy* v. *City of Manhattan Beach* (1953) 41 Cal.2d 879 [264 P.2d 932]; *Ensign Bickford Realty Corp.* v. *City Council, supra*) except where the ordinance was not passed in a lawful manner (*Kissinger* v. *City of Los Angeles* (1958) 161 Cal.App.2d 454 [327 P.2d 10]) or where there is a claim of spot zoning. (*Smith* v. *County of Santa Barbara* (1966) 243 Cal.

---

[3]Finding 21 and finding 22 read: "21. Defendant City Council intended that denial of plaintiff's application would prevent any development of said property prior to defendant's acquisition of the property.

"22. Defendants' paramount consideration at all times was the acquisition of the Wilcox Property by a public agency as open space or as a park."

App.2d 126, 130 [52 Cal.Rptr. 292].) Although there is some suggestion (*Pinheiro v. County of Marin* (1976) 60 Cal.App.3d 323 [131 Cal.Rptr. 633]) that the court may consider motives where the purpose of the zoning was to reduce the value of the property to acquire the property more cheaply, the case of *Viso v. State of California* (1979) 92 Cal.App.3d 15, 24 [154 Cal.Rptr. 580] recently stated otherwise. In *Viso*, plaintiff alleged that the purpose of the restrictive zoning was to reduce value of property for subsequent acquisition at reduced values. The *Viso* court cited the general rule that purpose or motive of the agency passing an ordinance is irrelevant since the validity of the ordinance rests not on subjective motivation but on objective effect.[4]

Furthermore, although there are numerous findings in the case at bar to suggest bad faith and improper motives,[5] there is no finding that the purpose of the city's denial of plaintiff's application to rezone was to reduce the value of the property for the subsequent acquisition at reduced values. Without that particular kind of bad faith or improper motive, the "notable exceptions" of the *Pinheiro v. County of Marin* case, *supra*, that would permit an examination into motives, would not apply even if that exception is still valid. Therefore, the general rule that motives should not be inquired into should properly apply here, and the city's motive in denying the rezoning application is irrelevant.

## IX

■ Appellant argues that the trial court erred in concluding that the planning commission's approval of respondent's resort hotel plot plan required the city to rezone the property for a resort hotel.

The approval of a plot plan did not require rezoning. (See *Avco Community Developers, Inc. v. South Coast Regional Com.* (1976) 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546].)

## X

In light of our conclusion that the trial court erred in directing a rezoning, we need not, and do not, consider the city's further contentions

---

[4]The *Viso* case does not take note of the notable exception in *Pinheiro* that permits an examination into motives where the purpose of the zoning was to reduce or freeze value so the property can be bought at a reduced price.

[5]See footnote 3, *ante* .

that the trial court erred in requiring testimony concerning the discussions between the council and the city attorney. We also need not, and do not, discuss the city's attack on certain findings by the trial court.

THE APPEAL OF TOSO

Toso has appealed from the denial of his claim for money damages. The facts relevant to that appeal are as follows:

Although, in 1974, the Wilcox property was zoned for single family residences, the general plan showed a resort hotel symbol, and at that time the property was worth $4.7 million. Toso entered into an agreement to purchase the Wilcox property, and submitted to the city an application for RH overlay zoning. After that, city officials and various citizens groups began looking into purchase of the Wilcox property for a park. The environmental impact report had the following statement: "If the approval is not obtained for that development, it may be expected that land costs will drop considerably, one estimate of cost if development is denied, at from $500,000 to $730,000, or from $7,692 to $15,538 per acre." Environmental groups continued to urge the city to purchase the Wilcox property for a park, appraisals on the property were arranged, and the director of recreation and parks said funds would be available for its purchase in 1975-1976. The rezoning application came up for a hearing, and the council voted to place the proposition calling for the purchase of the Wilcox property on the ballot in the next election. One of the councilmen urged immediate acquisition of the property on the grounds that waiting may increase the price. The city attorney asked Toso's attorney for the price of the property. A hearing was held on the denial of Toso's application for RH overlay zoning. The council in executive session decided Toso's asking price was too high. In a meeting, the city attorney said the vote of the people on the decision to purchase the Wilcox property was advisory only and not binding on the city. The city attorney said that the council could divorce itself from any desire to purchase property for a park, and could consider the matter of the zoning application on its merits. The city then told Toso they were no longer interested in buying the Wilcox property and that he was free to develop it as a residential subdivision. The city attorney dictated resolution No. 8111 which rezones the Wilcox property to a Planned Unit Development. Toso alleges that the zoning change to PUD caused the property's value to diminish to $600,000.

## I

Since the judgment in this case, the Regional Coastal Commission refused to accept Toso's application to proceed with the inn, and Toso's option to purchase the property has expired. Therefore, the lower court judgment ordering the city to rezone the Wilcox property was of no value to Toso, since he does not own the property. The mandamus portion of the judgment is therefore of no interest to Toso.

## II

Cross-respondent city argues that the appropriate remedy for arbitrary discriminatory zoning is mandamus, not inverse condemnation. Plaintiff may properly test the invalidity of a discriminatory zoning ordinance in an action for declaratory relief. (*Viso* v. *State of California* (1979) 92 Cal.App.3d 15, 22 [154 Cal.Rptr. 580]; *Friedman* v. *City of Fairfax* (1978) 81 Cal.App.3d 667 at 678 [146 Cal.Rptr. 687]) or a mandamus action (*Pan Pacific Properties, Inc.* v. *County of Santa Cruz* (1978) 81 Cal.App.3d 244, 253 [146 Cal.Rptr. 428]; *Friedman* v. *City of Fairfax, supra.*) "... [I]nverse condemnation is an inappropriate and undesirable remedy in cases in which unconstitutional regulation is alleged." (*Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266, 275 [157 Cal.Rptr. 372, 598 P.2d 25].)

However, as we shall discuss in some detail later, a plaintiff may still properly sue for damages in inverse condemnation where he alleges and proves unreasonable precondemnation activities. And in the case at bar, Toso is alleging that there was unreasonable precondemnation activities; he is not claiming arbitrary, discriminatory or spot zoning.

Toso also acknowledges that the particular zoning ordinance herein would not deprive the landowner of substantially all reasonable use of the property, such that the landowner would be entitled to declaratory relief under *Agins* v. *City of Tiburon, supra*, and therefore we do not discuss this issue further.

## III

The city argues that the fact that Toso failed to execute his option to purchase the Wilcox property does not affect the issue of whether the city's actions constitute a compensable taking. It is true that mandamus

is of no use to Toso now, since he no longer has an existing interest in the property. ■ Damages in inverse condemnation may nevertheless be available in a zoning action where a city's unreasonable precondemnation activities, during. the period of time that plaintiff holds an option, cause plaintiff to allow his option to expire.

We acknowledge that in the *City of Walnut Creek* v. *Leadership Housing Systems, Inc.* (1977) 73 Cal.App.3d 611 [140 Cal.Rptr. 690], the court held that relief is properly denied where plaintiff's option expired prior to the filing of a condemnation action. However, that case would not necessarily preclude an option holder from showing that these were unreasonable precondemnation activities while he held the option. In *City of Walnut Creek* it was stated that there was no improper act of the city that led to the abandonment of the option (73 Cal.App.3d at p. 623). By inference from that language, if a plaintiff can show that he abandoned his option because of the improper precondemnation conduct of the city, he should not be precluded from obtaining damages because he no longer holds the option. If the city's improper precondemnation activities constitute a de facto taking during the period that the option was valid, the date of the taking in condemnation is not the date of filing, but the date of the improper conduct that amounted to the de facto taking. The *City of Walnut Creek* case merely held that that city's actions did not amount to a de facto taking during the option period. That case did not hold that a city's actions *could* not amount to conduct under any other circumstances.

## IV

Toso argues that the court improperly applied a standard of physical taking or total uselessness of the zoned property as the standards necessary for finding a taking for damages for inverse condemnation. The court drew the following conclusions of law:

"3. The actions, activities and decisions of the defendants, involving the Wilcox Property since February 6, 1974, did not result in a physical damaging of said property (as distinguished from market value depletion and marketability) as contemplated by the California Constitution, Article One, Section Nineteen (then Section Fourteen)." ■ A zoning ordinance that completely destroys the value of property can only be challenged by an action for declaratory relief or mandamus, and a plaintiff can not recover on the theory of inverse condemnation so as to

transmute an excessive use of the police power into a lawful taking for which damages must be paid. (*Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266 [157 Cal.Rptr. 372, 598 P.2d 25].) Therefore, even if the court applied the standard of physical damage erroneously, Toso could not have been hurt thereby, since he was not entitled to money damages in inverse condemnation. The only remedy for deprivation of use of substantially all the property is to have the offending ordinace declared unconstitutional in an action for mandamus or declaratory relief; and the remedy of money damages in inverse condemnation is not available.

Whether there was a mere diminution in market value (*Brown* v. *City of Fremont* (1977) 75 Cal.App.3d 141 [142 Cal.Rptr. 46]; *Sierra Terreno* v. *Tahoe Regional Planning Agency* (1978) 79 Cal.App.3d 439 [144 Cal.Rptr. 776]) or whether a zoning deprived a landowner of substantially all use, a landowner may not sue for damages in inverse condemnation. (*Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266 [157 Cal.Rptr. 372, 598 P.2d 25].)

V

However, in the case at bench, Toso does not claim that he was deprived of substantially all value of his land by the failure to upzone so as to be entitled only to a remedy in mandamus or declaratory relief. (*Agins* v. *City of Tiburon, supra.*) Plaintiff does claim that there were inequitable precondemnation activities which entitle him to damages in inverse condemnation.

In footnote 14 in *HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 516, 517 [125 Cal.Rptr. 365, 542 P.2d 237], the court stated that inequitable zoning actions undertaken by a public agency as a prelude to public acquisition could result in damages.[6] The City of Santa Barbara claims that the above exception mentioned in footnote 14 has been eliminated by the recent case in *Agins* v. *City of Tiburon, supra.*

---

[6]Footnote 14 from *HFL, Ltd.* reads as follows: "Neither *Selby* nor this case presents the distinct problems arising from inequitable zoning actions undertaken by a public agency as a prelude to public *acquisition* (*Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345]; *Peacock* v. *County of Sacramento* (1969) 271 Cal.App.2d 845 [77 Cal.Rptr. 391]; or from zoning classifications invoked in order to evade the requirement that land *used* by the public must be acquired in eminent domain proceedings (*Sneed* v. *County of Riverside* (1963) 218 Cal.App.2d 205 [32 Cal.Rptr. 318]). Thus in *Klopping* the city in question made public announcements that it intended to acquire the plaintiff's land, then unreasonably delayed commencement of eminent domain proceedings, with the predictable result that the property

Therefore, we first examine the *Agins* case to determine whether or not a plaintiff may still sue for damages in inverse condemnation where there are inequitable precondemnation activities as a prelude to public acquisition in a zoning case or whether that cause of action has been superseded by the *Agins* decision. And, if a cause of action in inverse condemnation has not been eliminated by *Agins*, we will then determine whether, in the case at bench, there were such inequitable precondemnation activities, whether the motives of the ordaining body can be considered in making the determination that there were inequitable precondemnation activities, and whether plaintiff would be barred in his action for damages by the absence of a resolution of condemnation.

## VI

We do not agree that *Agins* v. *City of Tiburon* has eliminated the cause of action in damages for inequitable precondemnation activities, where the inequitable zoning was undertaken as a prelude to public acquisition. Although the *Agins* court held that the City of Tiburon's precondemnation activities[7] did not amount to inequitable precondemnation activities, and therefore the plaintiffs therein were not entitled to

---

became commercially useless and suffered a decline in market value. We held only that the plaintiff should be able to include in his eminent domain damages the decline in value attributable to this unreasonable precondemnation action by the city. The case thus in no way resembles the instant one, in which plaintiffs make no allegations that the city intends to condemn the tract in question.

"Similarly in, *Peacock* the county had refused to permit any development of the land in question (barring even the growth of most vegetation), while assuring the owner that the restrictions were of no consequence because the county intended to acquire the land for an airport. When, after denying the owner any use of his property for five years, the county renounced its intent to acquire the land, the Court of Appeal affirmed a trial court finding that "'[t]he exceptional and extraordinary circumstances heretofore enumerated...constituted a take [*sic*] of the subject property by inverse condemnation."' (271 Cal.App.2d at p. 854.) Again one sees that the down-zoning rises to a taking only in connection with inequitable precondemnation actions by the public agency.

"Finally, the cases hold that a public agency may not use a zoning ordinance to evade the requirement that the state acquire property which it uses for public purposes. Thus in *Sneed*, the county, rather than acquiring land for an air navigation easement, simply enacted a zoning ordinance forbidding any structure or vegetation more than three inches high and proceeded to operate flights over the area thus restricted. The Court of Appeal held that the plaintiff had stated a cause of action in inverse condemnation. Unlike the instant case, *Sneed* involved a zoning ordinance creating an actual public use of the property." (Italics in original.)

[7]"[A]uthorization of studies which recommended acquisition of plaintiffs' land for open space and bonds for its purchase, and the filing and subsequent abandonment of an eminent domain proceeding" (p. 277) were the activities plaintiffs relied upon in *Agins* to support their claim of unreasonable precondemnation activities.

damages in inverse condemnation, there is nothing in the *Agins* case to suggest that such a cause of action is not still legally valid. *Agins* merely held that the particular conduct of the City of Tiburon did not amount to unreasonable condemnation activities. It did not hold that, under other circumstances, a city's precondemnation activities could not be such that there would be a cause of action for damages. We therefore hold that inequitable zoning actions by a public agency undertaken as a prelude to public acquisition *may* result in an action for damages in inverse condemnation.

## VII

 However, under the reasoning of *Agins* and comparing the facts of *Agins* to those in the case at bench, we find that the precondemnation activities in the case at bench also were not so unreasonable as to warrant damages in inverse condemnation. In *Agins*, as we have already noted, there was authorization of studies which recommended acquisition of plaintiff's land for open space, and there was an election in which the city passed an open space bond issue, followed by the city's sale of the bonds. In *Agins* the city also adopted an open space ordinance which downzoned the property on June 28, 1973.[8] On December 4 of that year, the city filed an eminent domain action, and on November 1, 1974, the city abandoned its eminent domain action. The Supreme Court in *Agins* rejected reliance on *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345], on the grounds that *Klopping* involved unreasonable delay following an announcement to condemn and other unreasonable conduct prior to condemnation. The *Agins* court held that there was no similar unreasonable delay or other conduct, pointing out that Tiburon instituted eminent domain proceedings less than six months after the ordinance was adopted, and the land use planning and decision making procedures undertaken by elected officials did not amount to a taking. The *Agins* court held that including property for public use in a general plan and calling a bond election and urging passage to secure funds for a public purpose does not amount to a taking.

Similarly, in the case at bar, the public hearing concerning the possible acquisition of Toso's property, the placing on the ballot a proposition concerning the purchase of the property, and the failure to upzone the property also did not amount to unreasonable precondemna-

---

[8]The plaintiff's potential use of the five-acre parcel he owned was reduced to not more than one dwelling per acre.

tion activities.[9] The activities or conduct of Santa Barbara in the Toso case were clearly no more unreasonable than were the activities of the city in *Agins*.[10]

The City of Santa Barbara also compares the facts in the case at bar to the facts in *Friedman* v. *City of Fairfax* (1978) 81 Cal.App.3d 667 [146 Cal.Rptr. 687] and in *City of Walnut Creek* v. *Leadership Housing Systems, Inc.* (1977) 73 Cal.App.2d 611 [140 Cal.Rptr. 690].

In *Friedman* v. *City of Fairfax* (1978) 81 Cal.App.3d 667 [146 Cal.Rptr. 687], the court found that the city's purpose in passing the downzoning ordinance was to acquire plaintiff's property, and there were public meetings and discussions in which the planning commission and the city council discussed acquiring Friedman's land. The court held that mere planning, public discussion and debate do not amount to inequitable precondemnation activity. The appellate court noted there could be no inequitable precondemnation activity where there is only public discussion and debate and no official action to acquire the property. (P. 678.) In the case at bench, there was merely public discussion and debate and there was also no official action to acquire the property, since the ballot proposition was advisory only. These activities would not amount to unreasonable precondemnation activities.

In *City of Walnut Creek* v. *Leadership Housing Systems, Inc.* (1977) 73 Cal.App.3d 611 [140 Cal.Rptr. 690], the city placed a bond issue on the ballot that specifically named a piece of property. The court therein held that the governmental body has the right to plan for acquisition of property and calling for a bond election and that urging passage to secure funds does not amount to unreasonable precondemnation activity giving rise to an action for inverse condemnation. Similarly, the advisory vote calling for the purchase of property in the case at bar would not amount to unreasonable condemnation activities.

## VIII

Toso argues that the precondemnation conduct of Santa Barbara in the instant case was exacerbated by Santa Barbara's bad faith and im-

[9]The delay herein was also not unreasonable.

[10]There are findings by the lower court herein that Santa Barbara was biased against and hostile to Toso, and there is no similar allegation of hostility in *Agins*. For reasons we shall discuss, we do not consider the allegations of hostility and bias, and therefore we do not distinguish the *Agins* case from the Toso case on that ground.

proper motives, that there was no similar finding of bad faith and improper motives in *Agins*, thereby distinguishing *Agins* v. *City of Tiburon* from the case at bar. That brings us to the question of whether or not we may consider the improper motivation on the part of the City of Santa Barbara, and thereby distinguish the facts in the case before us from the facts in *Agins* or whether improper motivations are beyond the scope of appropriate judicial inquiry.

The lower court in the case at bar made several findings of fact related to Santa Barbara's bad faith and improper motivations. These findings are:

"17. The vast majority of those members of the public speaking in opposition to the proposed Resort Hotel Plan were doing so for the purpose of furthering the City's acquisition of the Wilcox Property.

"21. Defendant City Council intended that denial of plaintiff's application would prevent any development of said property prior to defendant's acquisition of the property.

"22. Defendants' paramount consideration at all times was the acquisition of the Wilcox Property by a public agency as open space or as a park.

"23. Defendants had a conflict of interest in the conduct of the hearings on plaintiff's application, which conflict deprived plaintiff of a fair trial (hearing).

"24. Defendants had a personal bias and prejudice against plaintiff's interests which deprived plaintiff of a fair trial (hearing)." The lower court also stated that defendant city had a conflict of interest in acting on plaintiff's zoning application and that the zoning denial was arbitrary, capricious, oppressive, unreasonable and in bad faith. However, although there are abundant findings that there was bad faith, there is no finding or showing of any unreasonable precondemnation activities intended to freeze or lower the value of property and the absence of these activities may be crucial here.

In the case of *Pinheiro* v. *County of Marin* (1976) 60 Cal.App.3d 323, 327, 328 [131 Cal.Rptr. 633], the appellate court said that there was a "notable exception" to the general rule that motive of city officials is irrelevant to the inquiry of the reasonableness of a zoning

ordinance. The *Pinheiro* court held that motive may be inquired into where there are precondemnation activities intended to freeze or lower the value of the property so that the property can be bought at a reduced price.

While the *Friedman* case (*Friedman* v. *City of Fairfax* (1978) 81 Cal.App.3d 667 [146 Cal.Rptr. 687]) also states that the purpose or motive of the ordaining body may not be inquired into, the *Friedman* case includes dicta to the effect that the evidence in that case showed an absence of improper motives and a legitimate public purpose.[11]

And in *Viso* v. *State of California* (1979) 92 Cal.App.3d 15 [154 Cal.Rptr. 580], plaintiff alleged that the purpose of the restrictive zoning therein was to reduce the value of property for subsequent acquisition at a reduced value. The *Viso* court cited the general rule that the purpose or motive of the agency passing an ordinance is irrelevant since the validity of the ordinance rests not on subjective motivation but on objective effect. The *Viso* court cited the *Pinheiro* case in support of the above general rule and ignored the "notable exception" of *Pinheiro* that motivation may be inquired into where the purpose of the precondemnation activities was to acquire the property at a frozen price[12] or at a reduced price.

Therefore, the cases do not clearly decide whether the "notable exception" of *Pinheiro* is still valid. Application of the rule of the *Viso* case to the facts before us would suggest that the exception is not still valid and that the correct rule is that improper motivation may not be examined. However, the "notable exception" rule of *Pinheiro* has not been overruled in a subsequent case and the *Friedman* case did point to the absence of improper motivation in making its decision, even while stating that motivations may not be inquired into.

However, we need not resolve this conflict as to the present validity of the "notable exception" mentioned in the *Pinheiro* case. In the case at bar, although the court below found that there was bad faith, capriciousness and arbitrariness on the part of the city, there is no finding

---

[11]The *Friedman* court stated that the evidence revealed a "legitimate public purpose, untainted by improper motives." (P. 679.)

[12]Since the *Viso* court did not discuss the "notable exception" it therefore did not clearly overrule the exception.

that the city failed to rezone Toso's property[13] or that they engaged in other inequitable precondemnation activities to freeze or lower the value of the land in order to buy it at a cheaper price. There are findings to suggest personal bias against Toso, as well as the city's desire to acquire the property and to block its development prior to acquisition. However, there was no specific finding that there were inequitable precondemnation activities by the city that were intended to freeze or lower the value of the land in order to permit its purchase at a reduced price. Without such a showing, motivation cannot be inquired into, even if the "notable exception" in *Pinheiro* is valid. Since there is no showing of precondemnation activities intended to freeze or lower the value of the land, the motives of the city in passing a zoning ordinance are irrelevant whether the notable exception of *Pinheiro* is valid or not. Even if the "notable exception" of the *Pinheiro* case is still valid, all we have before us in the instant case is a situation in which the general rule (motivations may not be considered) would apply.

## IX

Furthermore, there was no resolution of condemnation. Although it has been held that a formal resolution of condemnation is not required, and certain direct and special interference giving rise to damages in inverse condemnation can occur even in the absence of a formal resolution of condemnation (*People* ex rel. *Dept. of Pub. Works* v. *Peninsula Enterprises, Inc.* (1979) 91 Cal.App.3d 332 [153 Cal.Rptr. 895], the conduct of the public agency in question must have evolved to the point where its conduct does result in special and direct interference with plaintiff's property. "[T]he widespread impact resulting from mere general planning is noncompensable." (*People* ex rel. *Dept. Pub. Works* v. *Peninsula Enterprises, Inc.* (1979) 91 Cal.App.3d 332, 355 [153 Cal.Rptr. 895].)

Where the city is merely engaging in long range planning, plaintiff has not stated a cause of action in inverse condemnation. (*Smith* v. *State of California* (1975) 50 Cal.App.3d 529 [123 Cal.Rptr. 745].) It has been held that plaintiff did not state a cause of action in inverse condemnation where a freeway project would not affect plaintiff's property for 10 or 20 years, if at all, where there had been no condemnation resolution passed, and where any incidental impairment of plaintiff's

---

[13]We do not discuss here that it was a failure to upzone or rezone rather than downzoning. For the purpose of this issue, failure to upzone is not different from downzoning, insofar as we determine whether an action of this type is taken to reduce or lower the value of property.

property resulted only from the public knowledge of the proposed project.

And in *Friedman* v. *City of Fairfax* (1978) 81 Cal.App.3d 667, at page 678 [146 Cal.Rptr. 687], the court considered that there was "no official action to acquire" the property, in determining that there was no unreasonable precondemnation activities.

In the case at bench there was no resolution of condemnation, there was no announcement of intent to condemn, nor was there any official act by the city towards acquiring the property. While an absence of a formal resolution of condemnation is not crucial, there must be some official act or official expression of intent to acquire. In the case at bench there were public meetings, negotiations, planning, debates and an advisory ballot proposition calling for acquisition but there was no official act done by the city towards acquiring the property. We have here no more than general planning that is noncompensable. Absent either a formal resolution of condemnation *or* some other official action towards the acquisition of plaintiff's property, there can be no cause of action in inverse condemnation.

## X

Plaintiff argues that the reasoning of the *Klopping* case suggests that the Legislature, in enacting Code of Civil Procedure section 1243.1 (now repealed and replaced by Code Civ. Proc. § 1245.260), has indicated a delay of more than six months after a formal resolution of intent to condemn is unreasonable delay. Plaintiff alleges that the delay following the public vote for acquisition was compensable, in that the same yardstick should apply to the period of time that elapsed after the ballot proposition. As we have said before, the ballot proposition was merely part of the general planning by the city, and the statute relied on by plaintiff does not deal with such an election. It deals specifically with a resolution of condemnation. The election calling for the purchase of the Toso property is far short of the formal resolution of intent to condemn referred to in the above code section, and therefore that code section has no application here.

## XI

Toso argues that the city did not follow the statutory guidelines for dealing with proper methods of negotiating with a landowner (Gov. Code, § 7267 et seq.), the Relocation Assistance Act.

The court did find in finding No. 13 that the city did not use diligence in concluding negotiations with the landowner and therefore the conduct of the city was inconsistent with the statutory guidelines for such negotiations. However, Toso's rights are not expanded by these sections of the Government Code. Failure to comply with Government Code section 7267 would not in itself create a cause of action in inverse condemnation. Government Code section 7267 by its own language only creates a guide to be followed to the greatest extent practicable.[14]

The judgment is affirmed on the first two causes of action; it is reversed on the third, fourth and fifth causes of action. Neither party shall recover costs on appeal.

Jefferson (Bernard), J., and Rogan, J.,* concurred.

A petition for a rehearing was denied February 26, 1980, and the petition of appellant Toso for a hearing by the Supreme Court was denied May 14, 1980. Clark, J., was of the opinion that the petition should be granted.

---

[14]Plaintiff's rights to damage are not expanded by section 7267. (See Gov. Code, §§ 7270, 7274.)

*Assigned by the Chairperson of the Judicial Council.