[No. A046428. First Dist., Div. Three. May 25, 1990.]

TERMINALS EQUIPMENT CO., INC., et al., Plaintiffs and Appellants, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents.

COUNSEL

Ellman, Burke & Cassidy, Ellman, Burke, Hoffman & Johnson, Howard N. Ellman, John D. Hoffman and Mary-Noel Pepys for Plaintiffs and Appellants.

Erickson, Beasley & Hewitt, John H. Erickson, Alice M. Beasley, Bebe J. Anderson, John D. Rogers, Louise H. Renne, City Attorney, and Andrew W. Schwartz, Deputy City Attorney, for Defendants and Respondents.

OPINION

**WHITE, P. J.**—Terminals Equipment Co., Inc. (TEC), and Marine Terminals Corporation (MTC) appeal from the judgment dismissing their complaint and from an order staying discovery in this matter. Both the judgment and the order appealed from were entered following the sustaining of demurrers to the complaint, with leave to amend, on the grounds of failure to allege facts sufficient to state a cause of action. We affirm.

I

■ We review the facts alleged in the complaint in the light of the well-established principle that in any appeal from a judgment of dismissal sustaining a demurrer to a complaint, allegations of the complaint which are not contrary to law or to a fact of which this court may take judicial notice must be deemed to be true. (*Dale* v. *City of Mountain View* (1976) 55 Cal.App.3d 101, 105 [127 Cal.Rptr. 520].)

Appellants' complaint alleges that appellant TEC is the owner of certain real property (hereinafter referred to as the Property) located at 261-289 Steuart Street in San Francisco, and that it has leased all or part thereof to appellant MTC, an "affiliated" company. TEC and MTC are engaged in the business of providing stevedoring services at various ports in California. The property comprises approximately 31,400 square feet and is improved with a 2 story office building together with a smaller building used for offices and warehousing. It has been used by TEC and MTC for their business and corporate headquarters since approximately 1947.

According to appellants' complaint, as of 1978 the buildings on the Property had become "antiquated and outmoded, and . . . inadequate for [appellants'] purposes because of the growth of their businesses and related

office operations." Appellants wanted to demolish the old buildings and construct a much larger, multistory office building on the Property.

In 1977, the board of supervisors of respondent City and County of San Francisco (City) adopted a resolution designating a portion of the City's northeast waterfront a "Survey Area" (Survey Area) to be studied for possible redevelopment. Appellants' Property was included in this Survey Area. Thereafter, respondents San Francisco Redevelopment Agency (Agency) and City undertook a study of the Survey Area, and formulated various redevelopment "scenarios."

On August 23, 1979, the City planning commission adopted a resolution establishing a "Development Program" (Development Program) calling for appellants' Property and adjacent parcels to be redeveloped as a public waterfront park and open-space area, with improvements limited to a single restaurant and plaza, and with the Embarcadero roadway rerouted to the west. Under the planning commission resolution, this Development Program was adopted as the basis for "discretionary review" of all permit applications within the Survey Area.

On October 9, 1979, TEC filed an application with the City's central permit bureau for a building permit to demolish the existing two-story office building on the Property, and to build a new eight-story office building comprising approximately two hundred and seventy thousand square feet of rentable space. The ground floor of the new building would be rented for commercial and restaurant use, and a portion of the upper seven stories would be used for appellants' corporate headquarters. The remainder of the new space would be rented to third parties. Pursuant to its resolution concerning the Development Program for the Survey Area, the City planning commission exercised its authority of discretionary review and refused to approve TEC's building permit.

On or about January 5, 1981, the Agency and the City board of supervisors approved and adopted a redevelopment plan (the Plan) for substantially the same area as was covered by the Survey Area. This Plan enunciated substantially the same proposed uses, plans and objectives as had been set forth in the Development Program. Appellants' Property was included in the area covered by the Plan, which designated the Property for development as a recreational waterfront park, the rerouting of the Embarcadero roadway, and limited development of up to 12,000 square feet for restaurant purposes; no provision is made for any other commercial uses. According to appellants' complaint, the Plan provides that: real property located within the area at issue may be acquired by purchase, condemnation, or eminent

domain if a building within the Plan area ". . .'must be removed in order to effect a change in land use as provided in [the] Plan' "; the zoning of all property within the Plan area shall be revised " 'to conform to the land uses and development authorized by this Plan' "; all building permit applications for property within the Plan area will be referred to the Agency prior to approval by the City; and " 'no building permit shall be issued unless it conforms' " to the redevelopment Plan.

On or about January 15, 1981, the City planning commission disapproved appellant TEC's application for a building permit on the basis of its inconsistency with the Plan. Because of the planning commission's disapproval, the City's central permit bureau refused to process the building permit application further. There is no allegation in the complaint that appellants challenged this decision, either by appealing to the City's board of permit appeals or by petitioning for a writ of mandate in superior court.

The complaint next alleges that in or about April through June 1981, discussions took place between the City, the Agency, and appellants concerning the latter's possible participation in projects under the Plan. These discussions were not fruitful. On or about July 14, 1981, the Agency denied appellant TEC's request that its Property be aggregated with other parcels in the Plan area for development as a hotel. Appellants then informed respondent that they would not voluntarily participate in the Plan either by leasing the Property to respondents or by undertaking a joint venture with respondents, because they could not obtain "a reasonable economic return" thereby. Instead, appellants proposed that the Agency purchase the entire Property.

The complaint alleges that thereafter, although appellants made "numerous inquiries" of the Agency and of various City agencies to ascertain when acquisition of the Property would proceed, it never obtained a firm response. According to the complaint, although City and Agency officials have on "numerous occasions . . . assured" appellants that the Property would eventually be acquired by negotiation or through the power of eminent domain at some future date, "[t]he Agency has stated . . . that it is not able to proceed with acquisition" because of various matters affecting the Plan and the proposed projects thereunder, including the future of the Embarcadero freeway, public transportation facilities in the area, and other subjects. There is no allegation in the complaint that either respondent has commenced negotiations with appellants to purchase the Property, has made any offers to purchase the Property, or has made any statements indicating a present intention to acquire the Property by condemnation or otherwise.

For seven years, the matter continued in this state of limbo. According to the complaint, in or about March 1987, appellants made some more inquiries to respondents about possible acquisition of the Property, without success. Finally, on June 10, 1988, appellants filed the instant complaint for inverse condemnation and precondemnation damages. On April 14, 1989, the trial court sustained respondents' demurrers on grounds of failure to state a cause of action, and granted leave to amend.

Thereafter, a hearing was held on appellants' previously stayed discovery motions seeking to compel production from respondents of certain internal memoranda. Following the hearing, the trial court found that "until [appellants] can state a valid cause of action, they cannot make the requisite showing to overcome the government privilege stated in Evidence Code section 1040," and ordered that the stay of discovery remain in effect "until [appellants] file an amended complaint that is not subject to demurrer." Rather than amend their complaint, appellants elected to stipulate to judgment. On June 7, 1989, the trial court filed the stipulated judgment.

## II

The central issue on appeal is whether the trial court was correct in sustaining the demurrers to appellants' complaint for failure to state facts constituting a cause of action. We conclude that there was no error.

In our review of this judgment of dismissal sustaining a demurrer to a complaint, we are guided by well-settled principles governing the testing of the sufficiency of the complaint. ■ "A demurrer admits all material and issuable facts properly pleaded. [Citations.] However, it does not admit contentions, deductions or conclusions of fact or law alleged therein. [Citations.]" (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732]; see also *White* v. *Davis* (1975) 13 Cal.3d 757, 765 [120 Cal.Rptr. 94, 533 P.2d 222].) Thus, while allegations of the complaint are deemed to be true in ruling on a demurrer, "where an allegation is contrary to law or to a fact of which a court may take judicial notice, it is to be treated as a nullity [citation]." (*Dale* v. *City of Mountain View, supra*, 55 Cal.App.3d at p. 105.)

■ Where the trial court sustains a demurrer with leave to amend but the plaintiff elects not to amend, there is a presumption that the plaintiff has stated as strong a case as he or she can. In such instances, in determining whether the trial court has abused its discretion, the appellate court must resolve all ambiguities and uncertainties raised by the demurrer against the plaintiff; "if the complaint is objectionable on any ground raised by the

demurrer, the judgment of dismissal must be affirmed. [Citations.]" (*Hooper v. Deukmejian* (1981) 122 Cal.App.3d 987, 994 [176 Cal.Rptr. 569].)

■ The first of the two purported causes of action set forth in the complaint sounds in inverse condemnation. Appellants contend that as a result of the actions of respondents in adopting the Plan and refusing "to permit any substantial renovation or development of the Property," and their subsequent "unreasonable delay in acquiring the Property by negotiation or by means of eminent domain, [they] have deprived and continue to deprive [appellants] of all reasonable economic and beneficial use of the Property without payment of just compensation, in violation of the California Constitution, Article 1, Section 19."[1]

■ Generally, the adoption of zoning ordinances or land use plans such as the one at issue in this case is a matter within the police power of the state and its subdivisions. (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 155-160 [130 Cal.Rptr. 465, 550 P.2d 1001]; *HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 513-516 [125 Cal.Rptr. 365, 542 P.2d 237].) It is of course true, as appellants argue, that "an *undue* restriction on the use of private property is as much a taking for constitutional purposes as appropriating or destroying it." (*Candlestick Properties, Inc.* v. *San Francisco Bay Conservation etc. Com.* (1970) 11 Cal.App.3d 557, 572 [89 Cal.Rptr. 897], italics in original.) However, the courts of this state have consistently held that before a zoning ordinance or land use plan crosses the line separating a valid exercise of the police power from an unreasonable regulation tantamount to a compensable taking, the landowner must be deprived " 'of *substantially all reasonable use* of his [or her] property.' [Citation.]" (*Griffin Development Co.* v. *City of Oxnard* (1985) 39 Cal.3d 256, 266 [217 Cal.Rptr. 1, 703 P.2d 339], italics added; see *First Lutheran Church* v. *Los Angeles County* (1987) 482 U.S. 304, 309, 311-313, 322 [96 L.Ed.2d 250, 260-263, 268-269, 107 S.Ct. 2378]; *San Diego Gas & Electric Co.* v. *San Diego* (1981) 450 U.S. 621, 647, 651-653 [67 L.Ed.2d 551, 569-570, 572-574, 101 S.Ct. 1287] [Brennan, J., dis.].)

Thus, in *HFH, Ltd.* v. *Superior Court, supra,* 15 Cal.3d at page 513, the Supreme Court held that inverse condemnation does not lie in zoning actions in which the complaint alleges a mere reduction of market value.

---

[1] California Constitution, article I, section 19, dealing with eminent domain, states as follows: "Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of just compensation."

" 'Plaintiffs are apparently attempting to recover profits they might have earned if they had been successful in getting their land rezoned to permit subdivision into small residential lots, but *landowners have no vested right in existing or anticipated zoning ordinances.* [Citation.] A purchaser of land merely acquires a right to continue a *use* instituted before the enactment of a more restrictive zoning. Public entities are not bound to reimburse individuals for losses due to changes in zoning, for within the limits of the police power "some uncompensated hardships must be borne by individuals as the price of living in a modern enlightened and progressive community." [Citation.]' [Citation.]" (*Id.* at p. 516, fn. omitted, italics in original.)

██ As more recently reiterated by the California Supreme Court, "most land use regulations have 'the inevitable effect of reducing the value of regulated properties.' [Citation.] Such reduction in property value does not, by itself, render a regulation unconstitutional. 'Even a significant diminution in value is insufficient to establish a confiscatory taking. (*Euclid* v. *Ambler Realty Co.* (1926) 272 U.S. 365 . . . [75 percent reduction in value because of zoning law insufficient to establish a taking]; *Hadacheck* v. *Sebastian* (1915) 239 U.S. 394 . . . [nearly 90 percent reduction in value because of use restriction insufficient to establish a taking].)' [Citation.]" (*Griffin Development Co.* v. *City of Oxnard, supra,* 39 Cal.3d at p. 267.)

██ In every case in which a landowner seeks compensation for burdensome regulation of his or her property, the standard remains whether the regulations in issue have deprived the landowner of *all use* of the property. "When, as here, the claim is made that the regulation has significantly diminished the property value, the focus of the inquiry is on the uses of the property which remain. (*Penn Central Transp. Co.* v. *New York City* (1978) 438 U.S. 104, 131 . . . .) Plaintiff cannot contend he was denied *all* use of his property. He was neither deprived of his right to exclude others from his land nor denied the right to sell the property." (*Guinnane* v. *City and County of San Francisco* (1987) 197 Cal.App.3d 862, 868 [241 Cal.Rptr. 787], fn. omitted.) As noted by the court of appeal in *Guinnane* v. *City and County of San Francisco,* when presented with a factual situation similar to that before us here: "The denial of plaintiff's application to build four five-bedroom, five-bath houses of 6,000 square feet each . . . does not constitute a denial of all use of the land. The denial of an ability to exploit a property interest heretofore believed available for development is not a taking. [Citation.]" (*Id.,* at p. 868, fn. 4; see *Candlestick Properties, Inc.* v. *San Francisco Bay Conservation etc. Com., supra,* 11 Cal.App.3d at pp. 572-573; *First Lutheran Church* v. *Los Angeles County, supra,* 482 U.S. at pp. 309, 311-313, 322 [96 L.Ed.2d at pp. 260-263, 268].)

■ In the instant case, appellants contend that they have stated a cause of action for inverse condemnation by alleging that they have been denied "all reasonable economic and beneficial use of the Property without payment of just compensation." However, this conclusory allegation is contradicted by the actual facts pleaded in the complaint. It is clear that appellants are able to and in fact do continue to use the buildings on the Property for their corporate headquarters, as they have for over 40 years. There is no allegation that respondents have in any way interrupted appellants' use of the Property in this way, or otherwise interfered with it.

The fact that respondents have not permitted appellants to demolish the buildings and build a much larger, taller multipurpose office building does not rise to the level of a taking. There is no allegation in the complaint that appellants have been prohibited by respondents from repairing, renovating or improving the existing buildings on the Property. The regulations at issue in this case are only operating to restrict *new* uses of the subject Property, not to eliminate existing ones. There is no constitutional right on the part of landowners to develop their property for maximum economic profit, or to receive compensation when land use regulations restrict their ability to do so. As stated by the United States Supreme Court: "[T]he submission that appellants may establish a 'taking' simply by showing that they have been denied the ability to exploit a property interest that they heretofore had believed was available for development is quite simply untenable." (*Penn Central Transp. Co.* v. *New York City* (1978) 438 U.S. 104, 130 [57 L.Ed.2d 631, 652, 98 S.Ct. 2646]; see also *Furey* v. *City of Sacramento* (1979) 24 Cal.3d 862, 872 [157 Cal.Rptr. 684, 598 P.2d 844]; *Mira Development Corp.* v. *City of San Diego* (1988) 205 Cal.App.3d 1201, 1219 [252 Cal.Rptr. 825]; *Terminal Plaza Corp.* v. *City and County of San Francisco* (1986) 177 Cal.App.3d 892, 912 [223 Cal.Rptr. 379]; *Moore* v. *City of Costa Mesa* (C.D.Cal. 1987) 678 F.Supp. 1448, 1451; *Traweek* v. *City and County of San Francisco* (N.D.Cal. 1984) 659 F.Supp. 1012, 1026-1027; *Oceanic California, Inc.* v. *City of San Jose* (N.D.Cal. 1980) 497 F.Supp. 962, 974.)

Thus, the complaint, on its face, establishes that appellants have not been deprived of all reasonable use of their Property by respondents' actions. The trial court did not err in sustaining the demurrer to appellants' complaint on the ground that they failed to state facts sufficient to support a cause of action in inverse condemnation.[2]

---

[2] In view of our holding with regard to the failure of appellants' complaint to state a cause of action in inverse condemnation, we need not address the validity of the affirmative defenses of statute of limitations, failure to exhaust administrative remedies, and ripeness, all of which were raised only with respect to the first cause of action of the complaint.

## III

■ ■■■■ ■ The only other purported cause of action set forth in the complaint seeks "precondemnation damages" based on the opinion of the California Supreme Court in *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345], and in violation of Government Code sections 7267 through 7267.7.[3] Appellants allege that respondents "have engaged in unreasonable, inequitable and unlawful delay, and other conduct having the purpose and effect of reducing the fair market value of the Property, in anticipation of condemning or otherwise acquiring the Property for public purposes at such reduced value."

In *Klopping* v. *City of Whittier, supra*, 8 Cal.3d 39, the Supreme Court held that "a condemnee must be provided with an opportunity to demonstrate that (1) the public authority acted improperly either by unreasonably delaying eminent domain action following an announcement of intent to condemn or by other unreasonable conduct prior to condemnation; and (2) as a result of such action the property in question suffered a diminution in market value." (*Id.*, at p. 52, fn. omitted.) In order for any right to precondemnation damages to accrue, however, there must have been either some formal announcement by the condemning agency of its intention to condemn, or some other official act or expression of intent to acquire the property in question. (*Id.*, at pp. 52-53, fn. 5; *HFH, Ltd.* v. *Superior Court, supra*, 15 Cal.3d at pp. 516-517, fn. 14; *Cambria Spring Co.* v. *City of Pico Rivera* (1985) 171 Cal.App.3d 1080, 1098 [217 Cal.Rptr. 772]; *Toso* v. *City of Santa Barbara, supra*, 101 Cal.App.3d 934, 957.)[4]

Thus, where there has been "no official action amounting to an announcement of intent to condemn, there could be no liability based upon unreasonable delay following such an announcement." (*Cambria Spring Co.*

---

[3] The allegation in the complaint regarding Government Code sections 7267 through 7267.7 cannot state a cause of action for the reason that these provisions of the Government Code do not create any right of action or right to damages. (Gov. Code, §§ 7267, 7270; *Taper* v. *City of Long Beach* (1982) 129 Cal.App.3d 590, 594-595, fn. 1 [181 Cal.Rptr. 169]; *Toso* v. *City of Santa Barbara* (1980) 101 Cal.App.3d 934, 958 [162 Cal.Rptr. 210].)

[4] "In the case at bench there was no resolution of condemnation, there was no announcement of intent to condemn, nor was there any official act by the city towards acquiring the property. While an absence of a formal resolution of condemnation is not crucial, there must be some official act or official expression of intent to acquire. In the case at bench there were public meetings, negotiations, planning, debates and an advisory ballot proposition calling for acquisition but there was no official act done by the city towards acquiring the property. We have here no more than general planning that is noncompensable. Absent either a formal resolution of condemnation *or* some other official action towards the acquisition of plaintiff's property, there can be no cause of action in inverse condemnation" for unreasonable precondemnation activities. (*Toso* v. *City of Santa Barbara, supra,* 101 Cal.App.3d at p. 957.)

v. *City of Pico Rivera, supra,* 171 Cal.App.3d at p. 1098.) The pivotal issue in every case is whether the public agency's activities have gone beyond the planning stage to reach the "acquiring stage." (*Ibid.; HFH, Ltd.* v. *Superior Court, supra,* 15 Cal.3d at pp. 516-517, fn. 14; *People* ex rel. *Dept. Pub. Wks.* v. *Peninsula Enterprises, Inc.* (1979) 91 Cal.App.3d 332, 353-357 [153 Cal.Rptr. 895].)

In this case, it is clear that respondents' activities with respect to the Property have not reached the "acquiring stage." As appellants themselves make clear, no condemnation has taken place, and respondents have never taken any steps to commence eminent domain proceedings. Neither is there any allegation in the complaint that respondents have performed any official act or made any official expressions of intent to condemn the Property in question.

Appellants do assert that, through the years, various unnamed persons have made informal representations to the effect that respondents intended to acquire the Property by purchase or condemnation. However, these conclusory allegations do not set forth facts showing any official act by respondents towards actually acquiring the property. At most, they indicate that by designating the Property as a potential future park, the respondents had indicated their intention to *study* the Property for *possible* acquisition under the terms of the Plan. The facts alleged in the complaint fail to indicate that respondents have done anything with respect to the Property beyond this planning stage. "[A] planning designation is not the functional equivalent of an announced intent to condemn. . . . 'The plan is by its very nature merely tentative and subject to change. Whether eventually any part of [appellants'] land will be taken for a [park] depends upon unpredictable future events. If the plan is implemented by [respondents] in the future in such manner as actually to affect [appellants'] free use of [their] property, the validity of [respondents'] action may be challenged at that time.' [Citation.]" (*Guinnane* v. *City and County of San Francisco, supra,* 197 Cal.App.3d at pp. 866-867.)

In short, the allegations of the complaint are insufficient to state a cause of action for precondemnation damages. (*Cambria Spring Co.* v. *City of Pico Rivera, supra,* 171 Cal.App.3d at p. 1098; *Toso* v. *City of Santa Barbara, supra,* 101 Cal.App.3d at p. 957.) There was no error on the part of the trial court in sustaining the demurrer to the second cause of action.

## IV

■ In a related claim, appellants urge that the trial court erred in staying further discovery until appellants filed an amended complaint which would withstand demurrer. This, of course, appellants did not do.

The materials which appellants are seeking to have produced by respondents consist of several internal government documents pertaining to respondents' own analyses and estimates of the economic return on and fair market and rental value of the subject Property. Although respondents produced over 11 boxes of documents in response to appellants' far-reaching request for production, they asserted that the specific documents at issue were confidential internal government documents protected by the privilege set forth in Evidence Code section 1040, and refused to produce them.[5]

There is no merit to appellants' claim of error. Unless and until appellants filed a viable complaint stating at least one triable cause of action, further discovery of these documents would only be an unnecessary and burdensome additional expense to respondents, and there was no abuse of discretion in staying discovery. (*Pacific Architects Collaborative* v. *State of California* (1979) 100 Cal.App.3d 110, 127 [166 Cal.Rptr. 184]; *Silver* v. *City of Los Angeles* (1966) 245 Cal.App.2d 673, 674-675 [54 Cal.Rptr. 203] ["Once it is recognized that the complaint shows that plaintiff has no claim, all concerned should be spared the expense of further proceedings"].)

Appellant has failed to identify a single particularized need for the documents at issue here, or to show how they would be relevant to the complaint or calculated to lead to the discovery of relevant evidence. These documents could not possibly support appellants' first alleged cause of action in inverse condemnation by providing new facts indicating that they had in fact been deprived of all reasonable use of the Property; nor could they in any way affect appellants' failure to state their second cause of action for precondemnation damages, since they would not indicate whether or not respondents had made the necessary "official acts" or "official expressions" of intent to condemn. In short, if appellants were unable to state a viable cause of action on the basis of the facts already available to them, nothing in these disputed documents could do anything to change that.

---

[5] Evidence Code section 1040 provides in pertinent part as follows: "(a) As used in this section, 'official information' means information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made.

"(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so and:

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice . . . . In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered."

The judgment is affirmed.

Barry-Deal, J., and Strankman, J., concurred.

Appellants' petition for review by the Supreme Court was denied August 23, 1990.